Powell *v.* Allegheny County Retirement Board.

Argued April 17, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Donald L. McCaskey,* with him *Alan Bruce Bowden, Anthony J. Martin,* Solicitor, and *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* Special Counsel, for appellant.

*Gilbert J. Helwig,* with him *Thomas Todd, Mayer Sniderman,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE COHEN, October 3, 1968:

This is an appeal by the Retirement Board of Allegheny County (Board) from the judgment of the Court of Common Pleas of Allegheny County requiring the Board to pay appellee a retirement allowance of $360.94 per month, commencing December 1, 1967, and in addition pay $58,572.52 for back payments of retirement benefits owed to appellee up to and including the month of November, 1967.

This mandamus action has its genesis in the following factual background. Appellee was employed by the Allegheny County Planning Commission in 1924. He was actively employed by the Planning Commission until May 7, 1955, when he was arrested on a homicide charge arising out of the death of his wife.

Immediately following his arrest, appellee forwarded a letter to the executive director of the Planning Commission requesting a six month leave of absence from his position. This request was never acted upon by the Planning Commission, nor did the Planning Commission notify appellee or indicate that there had been any change made in the status of appellee as an employee of the county.

On October 16, 1956, appellee was tried, convicted and sentenced to Rockview Penitentiary for a period of three years. As a result of his imprisonment, he performed no services for the Planning Commission from May 7, 1955, until the present time.

While appellee was incarcerated, he repeatedly offered through his attorney and others to pay the retirement fund contributions necessary to protect his eligibility to receive retirement benefits when he reached the age of sixty on November 1, 1957. These offers of payment were refused by the Board.

On November 29, 1957, appellee, while still confined to prison, sent a letter to the secretary of the

Allegheny County Retirement Board indicating once again his desire to make the necessary monthly contributions which had not been paid during his absence but no response was forthcoming by the Board.

On January 11, 1960, appellee requested retirement benefits and was refused by the Board. Appellee then commenced on June 18, 1965, the present action in mandamus to compel the Board to make payment.

The court below, in awarding appellee back retirement benefits and a future monthly pension, held that appellee never manifested an intention to resign from his employment position with the Planning Commission prior to his sixtieth birthday and, furthermore, the Planning Commission never took the necessary steps to terminate his status as an employee. On the basis of this reasoning, the court below concluded that appellee continued to be an employee of the county until he reached retirement age of sixty and hence was eligible to receive retirement benefits.

The primary issue for our resolution is whether or not appellee's employment status with the Planning Commission terminated, and if such is the case at what time did that event occur? The Board first argues that appellee's employment status terminated as of May, 1955, since appellee after that date performed no services for the Planning Commission. Appellee's position, on the other hand, is that such relationship continued to exist as a result of the Planning Commission's inaction on appellee's request for a six month leave of absence and its subsequent failure to notify appellee that he was no longer considered an employee. Such failure, appellee urges, lulled him into a false sense of security that his employer-employee relationship was still viable and as such no action was necessary on his part with respect to keeping alive his eligibility for retirement benefits.

A determination of this issue involves a careful analysis of the relative duties vis-a-vis an employer and employee with respect to termination of employment. As stated in 56 C.J.S., Master and Servant, §38 (1948), the general rule is "a contract of employment for personal services is terminated by the death of the servant, or where by reason of insanity, sickness or other disability, or conviction of a felony he is unable to perform his contract, unless the parties have contracted to the contrary." This same section indicates that where an employee is absent for an appreciable length of time from his employment, it is unnecessary for the employer to notify the employee of termination since the failure on the part of the employee to perform services for that length of time works a termination automatically.

Both the Board's and appellee's reliance upon a number of unemployment compensation cases is completely misplaced. Appellee relies upon these cases to establish the proposition that the only duty an employee has is to manifest an intention to continue in his employer's employ and that such manifestation shifts the burden to the employer to take further action to terminate the employment relationship. These cases, however, are inapplicable to the present situation, since they involve only a determination of whether or not the employee was entitled to unemployment compensation under the applicable statutory provisions. Unemployment compensation cases involve the question of whether the employee left his employment voluntarily and without cause of a compelling nature because, if a finding to this effect were made, he would be ineligible for unemployment benefits. In other words, it was incumbent upon the employee to demonstrate that he still intended to be part of the labor force, but for the time being was compelled to leave

his employ. Therefore, it is obvious that the employee's manifestation of intent by way of a request for a leave of absence would be a crucial factor in determining the employee's continued availability and desire to remain a member of the labor force and hence eligible to obtain unemployment compensation. However, the unemployment compensation cases are unlike the instant case because here we are concerned with the relationship and not the unemployment compensation statute. Here we must determine only whether the relationship has continued and not the reasons for its termination. It goes without saying that different standards and criteria must be used other than an employee's own manifestations in determining termination of employment.

Bearing in mind these broad general principles, we turn our attention to the crux of the instant case, namely, what effect, if any, did appellee's request for a leave of absence, unacted upon by the Planning Commission, have on his status as an employee of the county?

We are of the opinion that the request had no effect whatsoever on appellee's status, and consequently, *he ceased to be an employee* of the county *as of the date he failed to report for work* and failed to perform any additional services for his employer. The Planning Commission had no duty to respond to appellee's request for a leave of absence and appellee's failure even for good cause to report for work after his request was not granted was tantamount to a "voluntary termination" of his employment position. Since appellee had a long and continued absence, the Planning Commission had no duty to inform him of his status and thus was entirely justified in treating appellee as a non-employee as of May 7, 1955, when he ceased to perform any services.

While we recognize that appellee probably had no intention to resign his position, the law under these circumstances will presume such an intention by the continued failure of an employee to assume his employment obligations after a "reasonable time" has elapsed. It is not enough for an employee to sit back and remain away from his employment for an unreasonable period of time and expect his employer to notify him as to his status as an employee. The employee must either procure a leave of absence from his employer or once again resume his services if he is desirous of not being deemed as a matter of law to have "voluntarily quit."

Therefore, the next question we must discuss and analyze is whether appellee having "voluntarily quit" or "resigned" from his employment position with the county, is nonetheless eligible for and presently entitled to receive retirement benefits.

A resolution of this question involves an interpretation and application of the Act of July 28, 1953, P. L. 723, as amended, 16 P.S. §4713(d), which reads as follows: "(d) Any person who, after twenty or more years' service as a county employe resigns from his or her office position or employment before reaching the age of sixty years, *shall continue to pay into the retirement fund, monthly, a sum equal to the last monthly contribution paid while in the employ of the* county or county institution district, *until he or she reaches the age of sixty years,* when such former employe shall be eligible to receive a retirement allowance which shall be computed on the average monthly compensation as received by the former county employe prior to his or her separation from the service of the county or county institution district in accordance with the provisions of subsection (a) of section 1712. Such former county employe shall be eligible to receive, in addition

to a retirement allowance, a service increment, if any, in accordance with the provisions of subsection (b) of section 1712 only to the time of his or her separation from the service of the county or county institution district." (Emphasis supplied).

There is no dispute over the fact that appellee had performed services for the county for a period in excess of thirty years and hence if he had continued payments until he reached the age of sixty, he would have qualified for retirement benefits.

The Board, however, argues that the statutory language in the Act of 1953 providing that an employee under these circumstances "shall continue to pay into the retirement fund, monthly, a sum equal to the last monthly contribution paid . . . until he . . . reaches the age of sixty years," mandates that appellee's repeated offers to make retroactive contributions fail to satisfy the statutory requirements. We disagree.

The purpose of requiring monthly contributions under this section was to maintain the actuarial soundness of the retirement system by first requiring payments until the employee reached retirement age, and second to require monthly payments so as to allow for an investment factor on the funds as they are received.

Since the obvious purpose of this provision was to maintain actuarial soundness, the word "shall", in our opinion, should be interpreted as mandatory only in the sense that an employee who resigns after he has complied with the service requirement, but has not arrived at the required age, must perform that which is necessary to maintain this actuarial soundness. Therefore, appellee in order to be eligible for retirement benefits must (1) make back payments into the retirement system from May 7, 1955, up to and including November 1, 1957, the date he reached retirement age of sixty, and (2) interest on these back payments

from May 7, 1955, until the date he made his first offer to make such payments to the Board and was refused. Since the record does not indicate at what time he made the initial offer, on remand of the case, the court below shall make such a determination in finally computing appellee's benefits.

The Board next argues that appellee is not entitled to a service increment under the Act of May 31, 1955, P. L. 111, 16 P.S. §4712(b) which provides, inter alia, as follows: "(b) In addition to the retirement allowance which is authorized by this article and notwithstanding the limitations therein placed upon retirement allowances, any *present or future county employe* who upon retirement shall be eligible to receive payment of a retirement allowance and who has been employed as such for twenty-one or more years during which period of time he or she shall have made monthly contributions into the retirement fund, shall also be eligible to the payment in addition to a retirement allowance a service increment. . . ." (Emphasis supplied).

This Act by its terms limits service increments to "present or future county employees" and since appellee as we now decide was not an employee on or after the effective date of the Act, he is not presently entitled to a service increment. Consequently, on remand the court below shall compute the amount of the award for back payments and future monthly benefits to reflect appellee's ineligibility to receive any service increment.

The Board's final two arguments involve the propriety of interest payments to appellee apparently allowed by the court below. The first question presented is whether or not appellee is entitled to compound interest on the back payments due and owing by the Board. We are of the opinion that the court below erred in allowing recovery of compound interest. It

is fairly well established that the law in this Commonwealth frowns upon compound interest and as such will only permit compound interest on a debt when the parties have provided for it by agreement or a statute expressly authorizes it. *Murray v. Prudential Insurance Company of America,* 144 Pa. Superior Ct. 178, 18 A. 2d 820 (1941) ; 47 C.J.S., Interest, §3(b) (1946), and cases cited therein. Since no agreement or statute exists authorizing the allowance of compound interest on the debt owed to appellee by the retirement system, the court below on remand in computing the amount of the award is directed to use simple and not compound interest.

Moreover, we agree with the Board's second argument concerning the payment of simple interest on all back payments up to and including the present time. Appellee made a demand for his retirement benefits as of January 11, 1960 and was refused these benefits by the Board on February 15, 1960. The present mandamus action was not instituted until June 18, 1965, over five years later and we are therefore of the opinion that for the period of delay in finally instituting an action to recover the retirement benefits, appellee should not be allowed interest payments on the debt. Cf. *Allen v. West Mifflin Borough,* 419 Pa. 394, 397, 214 A. 2d 502 (1965).

In summary we hold as follows: (1) appellee ceased to be a county employee as of May 7, 1955; (2) appellee is entitled to retirement benefits under the Act of 1953, as amended; (3) appellee is required to make retroactive payments into the retirement system from the period he ceased to be an employee up to and including the date he reached his sixtieth birthday; (4) appellee shall also be required to make interest payments on these back payments from the period he ceased to be a county employee up to and including

his initial offer to the Board to make the retroactive payments; (5) appellee is not entitled to receive any service increment under the Act of 1955; (6) appellee is not entitled to receive compound interest on the debt owed to him by the Board, and (7) appellee is not entitled to receive simple interest on back payments during the period of time he delayed commencing his mandamus action against the Board. (February 15, 1960 to June 18, 1965).

The judgment of the court below is vacated and the record remanded to the court below with instructions to compute appellee's retirement benefits in accordance with this opinion.