600 A.2d 228

**N.E.A. CROSS, INC., a Pennsylvania Corporation, Appellant,**

**v.**

**NATIONAL FUEL GAS SUPPLY CORPORATION,
a Pennsylvania Corporation.**

Superior Court of Pennsylvania.

Argued Oct. 1, 1991.

Decided Dec. 19, 1991.

Petition for Allowance of Appeal Denied June 1, 1992.

Bradford J. Mcillvain, Philadelphia, for appellant.

Gary Eiben, Erie, for appellee.

Before TAMILIA, KELLY and MONTGOMERY, JJ.

TAMILIA, Judge:

Appellant, N.E.A. Cross Inc. (NEA), appeals from the judgment nunc pro tunc in favor of appellee, National Fuel Gas Supply Corporation (National).

The present dispute relates to an overpayment by National involving Gas Purchase Agreement No. 37061, executed in February, 1982. The parties stipulated to the following facts before the trial court. Between 1977 and 1982, NEA and National entered into a series of gas purchase agreements, which developed into transactions involving often in excess of $1,000,000 per month. National issued checks to NEA monthly, based on check requisitions detailing the amount of gas purchased. In turn, based on these figures, NEA would make monthly payments of a one-eighth share to various landowners. Mistakes by National in the collection of data necessary for preparation of check requisitions

and in the computation of payments were not uncommon. Thus, in Agreement No. 37061, the parties made the following allowance for mistakes:

ARTICLE IX(c): If any error or inaccuracy in chart information, payments, statements, calculations or determinations is discovered, proper adjustment and correction thereof shall be made as promptly as practicable thereafter.

When issuing a check for the gas purchased during July/August, 1982, National overpaid NEA by $7,181.50. The mistake was a result of an error by National in recording information received from meter readings for gas received during the months in question. The error was detected by National and the check requisition for September/October, 1982, was issued accordingly with the notation "volume adjustment." Because only a limited amount of fuel was provided during that period, however, National was able to recoup only $2,096.96, leaving an outstanding balance of $5,084.54. Although check requisitions for October/November, 1982, and November/December, 1982, show sufficient quantities of gas were delivered so that National could have deducted the amount due from NEA, National erred in failing to do so. National continued to purchase gas from NEA under Agreement 37061 but apparently forgot about the credit it was due until March, 1988, when it deducted $5,084.54 from its payment to NEA.

NEA filed the underlying action, arguing National was not entitled to recovery because, pursuant to the terms of the purchase agreement, it waited too long to try to recoup the overpayment. Argument was held and the trial court, without a jury, found in favor of National. Although the Order in National's favor was entered May 23, 1990 and amended June 5, 1990, judgment was not entered until May 7, 1991. The court held, in light of the relationship of the parties, the process of determining amounts of gas purchased and the ongoing, complex billing process, the delay in the set-off was "reasonable." (Slip Op., Bozza, J., 3/21/91, pp. 3–4.) The court reasoned the oversight was under-

standable considering the volume of business exchanged by the parties. Also, the parties' continuing relationship meant recoupment would not in any way be burdensome to NEA.

NEA now argues National's attempt to correct a billing error more than five years after it was discovered was untimely under the terms of the contract, which directly governs the present dispute. In short, National did not correct the problem "as promptly as practicable" and, therefore, should be precluded from adjusting the payments to NEA more than five years later.

National contends it made two mistakes in the preparation of check requisitions for payment to NEA, and each of these errors was corrected almost immediately after it was discovered. Thus, National did correct the errors which led to the over-collection "as promptly as practicable." In the alternative, National contends the language of the agreement was ambiguous and, therefore, the trial court correctly considered extrinsic evidence in deciding whether National's actions were in compliance with the contract.

■ Whether the trial court has correctly interpreted a writing, in ascertaining the legal duties which arise from it, is a question of law which this Court may review. *Loeffler v. Mountaintop Area Joint Sanitary Authority*, 101 Pa. Cmwlth. 514, 516 A.2d 848 (1986); citing *Cowen v. Krasas*, 438 Pa. 171, 264 A.2d 628 (1970). As cited above, the following provision in the contract was subject to the trial court's interpretation:

> If any error or inaccuracy in chart information, payments, statements, calculations or determinations is discovered, proper adjustment and correction thereof shall be made as promptly as practicable thereafter.

Although the trial court did not find that National corrected the problem "as promptly as practicable," it found under the circumstances the more than five year delay was commercially reasonable. In support of its interpretation, the trial court cited 13 Pa.C.S. § 2309(a), Shipment, delivery or

other action, which states: "[T]he time for shipment or delivery or any other action under a contract if not provided in this division or agreed upon shall be a reasonable time." We agree with NEA the trial court erred in applying this provision of the Pennsylvania Commercial Code because the parties clearly agreed that time for performance would be "as promptly as practicable."

"When a contract is clear and unequivocal, its meaning must be determined by its contents alone." *Department of Transportation v. Manor Mines, Inc.*, 523 Pa. 112, 119, 565 A.2d 428, 432 (1989). In *PBS Coals, Inc. v. Burnham Coal Co.*, 384 Pa.Super. 323, 558 A.2d 562 (1989), we stated:

> The paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties. In determining the intent of parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.

*Id.*, 384 Pa.Superior Ct. at 328, 558 A.2d at 564 (citations omitted). Here, the trial court ignored the language of the contract and substituted the requirement that corrections be made a reasonable time thereafter.

The obvious purpose of the contractual requirement that corrections be made "as promptly as practicable" is to allow the parties to close the books on past transactions. NEA argues as follows:

> If a correction could be made more than five years after discovery, then [NEA] would not know for at least five years later whether National Fuel would seek reimbursement for an earlier mistake by National Fuel. [NEA] also makes payments to landowners who own the property on which the gas wells are located. [NEA] bases its payments to the landowners based on National Fuel's payments. Thus, the longer National Fuel waits to correct errors, the greater chance that [NEA] may be caught in the middle and prejudiced.

Appellant's brief, p. 9. The fact that little or no prejudice resulted or could result from the type of error National made in this case should not be determinative of the outcome of this case. Under the contract, there should be no difference whether the error by one of the parties is major or minor. The parties did not differentiate between large and small errors in the agreement language, yet it appears the trial court based its decision upon the degree of magnitude of the error involved.

> An oversight of the kind involved in this dispute is understandable considering the volume of business and amount exchanged by the parties. Moreover, the parties' continuing relationship facilitated recoupment in a manner not in anyway burdensome to N.E.A. Cross. *This is not to suggest, however, that future set-offs, particularly for significantly larger amounts, would meet the requirements of commercial reasonableness.*

(Slip Op., Bozza, J., 3/21/91, p. 4, emphasis added.) Thus the trial court's decision, which should have been based on his interpretation of the contract language, instead focused on the size of the error.

National contends it made two mistakes rather than one and both errors were corrected shortly after being discovered. It argues the first error occurred in the preparation of the check requisition for the month of July/August 1982 and was discovered and corrected by noting it on the check requisition for the month of September/October. National asserts its second error was in failing to carry over the balance of $5,084.54 in the October/November 1982 check requisition. It claims this second error was not detected until the preparation of the check requisition for the month of March, 1988, at which time the money was recouped. National argues, therefore, it complied with the agreement because both errors were corrected soon after they were discovered.

We do not accept National's analysis, as the only unlimited time period reflected by the agreement is applicable to discovery of the billing error in the first instance. Upon

discovery, the error must be rectified as "promptly as practicable," which in this case would have been in the November/December 1982 billing or immediately thereafter. National's two error position would allow for reconstituting each failure to adjust the discovered error, because of a lapse on their part, as a new error tacking and extending the "as promptly as practicable" requirement to each new discovery. This is patently untenable and we find there was just one continuing error made by National.

Next, appellee contends the trial court implicitly found the language of the contract to be ambiguous and, therefore, correctly considered extrinsic evidence in adhering to commercial reasonableness standard in making its decision. Specifically, the court considered the facts surrounding the relationship between the parties, including the following: the parties had entered into a long-term and ongoing relationship; the process of determining the amounts of gas purchased and formulating check requisitions was complex and ongoing; the volume of business transacted between the parties was large; and there was no evidence the recoupment was prejudicial or burdensome to NEA.

The trial court erred in basically rewriting the parties' agreement with reference to the concept of reasonableness, even though the court properly examined the circumstances surrounding the case. The words in the provision at issue are unambiguous. "If any error ... is discovered ... correction thereof shall be made as promptly as practicable thereafter." "Promptly" is defined as ready and quick to act as occasion demands. To do something promptly is to do it without delay and with reasonable speed. Blacks Law Dictionary, 1093 (5th ed. 1979). In *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977), our Supreme Court stated: "[w]e have interpreted 'as soon as practicable' to mean within a reasonable time depending on the facts and circumstances of each case, ...." *Id.*, 472 Pa. at 70, 371 A.2d at 195. Putting the words "promptly" and "practicable" in the same phrase, we interpret them to mean the party must act without delay and with reasonable speed

depending upon the circumstances. Certainly National did not act with reasonable speed under the circumstances by correcting its error more than five years after discovering it. As we stated in *PBS Coals, supra,* "the law does not assume the language of the contract was chosen carelessly," thus, in looking to the plain meaning of the agreement language, we find National did not comply with it. The volume of business transacted between the parties and the longevity of their relationship are irrelevant in determining whether National's error was corrected as promptly as practicable after being discovered. Only the processes of determining the amounts of gas purchased and formulating check requisitions were properly considered by the trial court. But even though these processes were complex and ongoing, five years is still too long of a period under the agreement.

Finally, appellee argues NEA should not be allowed to keep the overpayment because the law abhors a forfeiture. The case appellee cites for support is *Williams v. Vesley,* 290 Pa.Super. 192, 434 A.2d 196 (1981), which states: "forfeitures are viewed as odious in law, and are enforced by our courts only where there is the clearest evidence that a forfeiture was what was meant by the agreement of the parties." *Id.,* 290 Pa.Superior Ct. at 196, 434 A.2d at 197–198. In *Williams,* the court found the relevant clause in the contract was not sufficient to create a forfeiture of the defendant's rights under the agreement when the violation of the agreement was the result of circumstances beyond the control of the defendant. Here, the violation of the agreement was entirely within National's control. In addition, though we do not favor forfeitures, here the parties explicitly agreed if a mistake was made, prompt and practicable correction must follow after discovery of the error. The obvious extension of this provision is that by failing to timely correct the error, the party loses this right under the contract.

In light of the foregoing discussion, we reverse the trial court's judgment and find in favor of appellant, NEA.

Judgment reversed; case remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.