628 A.2d 425

David KATZEFF and Chester Miller

v.

Anthony FAZIO T/D/B/A Sol Sieff Produce Co., Appellant.

Superior Court of Pennsylvania.

Argued April 29, 1993.

Filed July 14, 1993.

John M. Purcell, Uniontown, for appellant.

Charles C. Gentile, Uniontown, for appellees.

Before ROWLEY, President Judge and TAMILIA and BROSKY, JJ.

BROSKY, Judge.

These consolidated appeals are from the final judgments entered in favor of appellees. Appellant presents the following issues for our review: (1) whether the trial court erred in permitting the jury to award attorneys' fees based upon the principal and interest due rather than on the principal balance due as required by the parties' agreement; and (2) whether the trial court erred in permitting the jury to award compound interest in calculating the amount of the verdict. For the reasons set forth below, we vacate the judgments and remand for a recalculation of the verdicts in accordance with the following discussion.

Before proceeding to consider the merits of appellant's claims it is necessary to recount the relevant facts of this case. Appellees, David Katzeff and Chester Miller, were partners in the Sol Sieff Produce Company.[1] In 1985, appellees sold the business to Myra Gaziano and appellant, Anthony Fazio. Approximately one-half of the purchase price of the business was

1. Sol Sieff was a wholesale fresh fruit and vegetable distributor which sold fresh produce to retail supermarkets, restaurants, hotels and other institutions in Pennsylvania, Maryland and West Virginia.

paid for by Mrs. Gaziano and appellant. The remainder of the purchase price was secured by judgment notes, payable to each of the appellees, pursuant to which the price was to be paid in monthly installments over a four-year period. The monthly payment schedule included payment of interest on the debt at a rate of ten percent (10%) per annum. As a guarantee of his payment of the debt, appellant placed securities in escrow.

Appellant subsequently acquired Mrs. Gaziano's interest in the Sol Sieff Company in June, 1986. As a result, the prior notes to appellees were refinanced by new judgment notes in the sum of $154,912.25 to Chester Miller and $147,709.92 to David Katzeff. The judgment notes again provided for interest to be paid at a rate of ten percent (10%) per annum. The debt also continued to be paid in monthly installments of principal and interest extending over a three-year period. In addition, the new judgment notes authorized appellees to confess judgment upon the principal balance and interest owed in the event of a default by appellant. The judgment notes further provided for attorneys' fees in the amount of ten percent (10%) of the principal balance or $250.00, whichever was greater.

In September or October of 1987, appellant met with appellees to discuss alternative payment arrangements on the notes. Appellant wanted to reduce his monthly payments by approximately one-half. Appellees indicated that they would accept this arrangement and instructed their counsel to draft a new agreement and amortization schedule. Under the terms of the proposed arrangement, appellant's payments would be reduced to twenty five hundred dollars ($2,500.00) per month until June, 1989. However, appellant would then be required to pay the entire balance of the purchase price in the final installment. Appellant disagreed with the final "balloon" payment and refused to sign the proposed agreement. Appellant nevertheless reduced his monthly payments under the prior judgment notes to $2,500.00. Appellees accepted the reduced payments and applied them towards the principal and

interest on the debt in accordance with the revised amortization schedules.

Appellees received appellant's last payment in February, 1989. When no further payments were forthcoming, appellees confessed judgment upon the notes in September, 1989. After appellees sought to execute on the securities held in escrow, appellant filed petitions to open the judgments. The petitions were granted in April, 1990 and disputed issues of fact were scheduled to be tried by a jury. These matters were consolidated for trial which was ultimately held in January, 1992. In determining the amount to which appellees were entitled, the jury was permitted to consider calculations, supplied by appellees' expert witness, in which the interest was compounded and appellees' attorneys' fees were based on the compounded balance, *i.e.*, the amount of the principal plus monthly compounded interest, rather than simply upon the unpaid principal balance. Appellant objected to the jury's consideration of this evidence and requested that the jury be given binding instructions that the awards were to be calculated in accordance with the terms of the judgment notes. The trial court denied appellant's request and issued no instructions to the jury. The jury subsequently found in favor of appellees and awarded appellees the amounts calculated by appellees' expert. Appellant filed timely post-trial motions challenging the jury's consideration of the expert's calculations and the trial court's refusal to issue binding instructions. The trial court denied appellant's post-trial motions. Appellant reduced the verdicts to final judgment and thereafter initiated these timely appeals which were later consolidated for review.

Appellant first contends that the trial court erred in permitting the jury to consider extrinsic evidence in calculating the attorney's fees to which appellees were entitled. Appellant also asserts that the jury should have been instructed to determine the attorney's fees in accordance with the terms of the judgment notes and amortization schedules appended thereto. Appellant's arguments appear to challenge the trial court's determination that the parties' agreement was ambiguous with respect to the method of calculating attorney's fees.

Appellant theorizes that because the agreement is unambiguous, the jury should not have been permitted to consider extrinsic evidence explaining the non-existent ambiguity and should have been instructed to calculate the attorney's fees in accordance with the judgment notes. We agree with appellant that the trial court erroneously found the judgment notes and amortization schedules to be ambiguous.

The judgment notes represent appellant's promise to pay money pursuant to specific terms. As such, they are not substantially different from any other type of contract and must be evaluated in accordance with the general principles which govern our construction of all contracts. With respect to matters of contractual interpretation, our Supreme Court has observed:

> Determining the intention of the parties is a paramount consideration in the interpretation of any contract. The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. However, ... where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances....

> A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The court, as a matter of law, determines the existence of an ambiguity and interprets the contract whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact.

*Hutchinson v. Sunbeam Coal Corp.,* 513 Pa. 192, 200–201, 519 A.2d 385, 389–390 (1986) (citations and quotation marks omitted). *Accord Steuart v. McChesney,* 498 Pa. 45, 48–53, 444 A.2d 659, 661–663 (1982); *N.E.A. Cross, Inc. v. National Fuel Gas Supply Corp.,* 410 Pa.Super. 451, 454–455, 600 A.2d 228, 229 (1991), *allocatur denied,* 530 Pa. 656, 608 A.2d 31 (1992); *Vogel v. Berkley,* 354 Pa.Super. 291, 296–297, 511 A.2d 878,

880–881 (1986); *Z & L Lumber Co. of Atlasburg v. Nordquist,* 348 Pa.Super. 580, 585–586, 502 A.2d 697, 700 (1985). Moreover, "[w]hether the trial court has correctly interpreted a writing, in ascertaining the legal duties which arise from it, is a question of law which this Court may review." *N.E.A. Cross, Inc. v. National Fuel Gas Supply Corp.,* 410 Pa.Super. at 454, 600 A.2d at 229. We will evaluate the documents evidencing the parties' agreement and the trial court's legal conclusions with these considerations in mind.

The relevant portions of the judgment notes are set forth as follows:

## JUDGMENT NOTE

FOR VALUE RECEIVED, the undersigned, ANTHONY FAZIO, hereby promises to pay to CHESTER MILLER, the principal sum of $154,912.25, together with interest at the rate of 10% per annum from and after June 27, 1986, as follows: the sum of $4,998.58 shall be payable on the 27th day of July, 1986, and a like sum on the 27th day of each succeeding month thereafter through May 27, 1989, and a final payment in an amount sufficient to pay all remaining principal and accrued interest on June 27, 1989.

\*       \*       \*       \*       \*       \*

In the event the undersigned shall fail to pay any sum required to be paid under this Note, then, in such event, at the option of the holder hereof, the whole unpaid balance of the principal indebtedness, together with all interest thereon and all other sums due hereunder, shall become due and payable immediately without notice to the undersigned. Further, in the event of a default hereunder, the undersigned hereby empowers any attorney of any court of record within the United States or elsewhere to appear for the undersigned and, with or without one or more declarations filed, to confess judgment against the undersigned in favor of the holder hereof, as of any term for the above sum, together with costs of suit and attorney's fees of 10% of the *principal balance* due or $250.00, whichever is greater.

Judgment Note to Chester Miller, dated 6/27/86 (Plaintiff's Exhibit 1) (emphasis added). Except for the name of the payee, the amount of principal and the amount of the monthly payment, the terms of the judgment note from appellant to David Katzeff are identical to those set forth in the note held by Chester Miller and thus will not be reiterated here. Mr. Katzeff's note provided that appellant owed the principal sum of $147,709.92, together with interest at the rate of 10% per annum, and that the principal and interest was payable in monthly installments in the sum of $4,763.85. Judgment Note to David Katzeff, dated 6/27/86 (Plaintiff's Exhibit 7). The debt was payable over the same time period as that owed to Mr. Miller. *Id.* The parties later prepared revised amortization schedule pursuant to which appellant's payments were reduced to $2,500 per month on each of the notes. *See* Plaintiff's Exhibit 4 (unexecuted agreement between Chester Miller, David Katzeff and Anthony Fazio and revised amortization schedules).

█ A careful review of the judgment notes discloses that they do not expressly explain the meaning of the phrase "principal balance." However, the notes set forth installment payment plans which are incorporated into amortization schedules attached and made part of the judgment notes. *See* Plaintiff's Exhibits 1 and 7; (Judgment notes and amortization schedules; the amortization schedules for David Katzeff and Chester Miller are respectively attached hereto as Appendix A and Appendix B);[2] Plaintiff's Exhibit 4 (unexecuted agreement and revised amortization schedules; the amortization schedules for David Katzeff and Chester Miller are respectively attached hereto as Appendix C and Appendix D). The amortization schedules provide a mathematical definition of the phrase "principal balance" pursuant to which the principal

2. The copies of the exhibits contained in Appendix A and B are derived from appellant's exhibits C and D, which were introduced at the hearing on appellant's petition to open the confessed judgments. Appellant's exhibits are identical to those supplied by appellees; we have only utilized appellant's exhibits due to the poor legibility of appellees' exhibits.

balance is calculated by subtracting the monthly payment of principal from the principal amount of the loan, *i.e.,*

principal balance = principal of loan − monthly principal.

*See* Appendices A–D (amortization schedules). Following initial payment on the debt, the amortization schedules use the same formula for determining the new principal balance, *i.e.,*

new principal balance = old principal balance − monthly principal.

*See* Appendices A–D (amortization schedules).

The parties' definition of principal balance clearly indicates that the parties intended the phrase "principal balance" to include only the unpaid principal amount of the loan less any payments of principal thereon. There is neither a patent nor a latent ambiguity contained in the documents which renders the term "principal balance" reasonably susceptible to more than one interpretation. Rather, it is evident from the language utilized in the judgment notes and amortization schedules that the parties intended the phrase "principal balance," as used in the judgment notes, to have the same meaning as that provided in the amortization schedules.[3] Despite this clear and unambiguous expression of the parties' intent, the trial court nevertheless proceeded to consider extrinsic evidence supplied by appellees to create an otherwise nonexistent ambiguity in the documents. As indicated by our Supreme Court:

When the parties have reduced their agreement to writing, the writing is to be taken to be the final expression of their intention. Where the contract evidences care in its preparation, it will be presumed that its words were employed

3. In fact, appellees' intent that "principal balance" refers only to the principal unpaid balance remaining on the loan is evidenced by the calculations contained in their confession of judgment complaints. *See* David Katzeff Complaint, filed 9/29/89 (identifying principal balance as $65,398.47 and attorney's fees as 10% of this sum, or $6,539.85) and Chester Miller Complaint, filed 9/29/89 (providing that principal balance is $70,761.72 and that attorney's fees are 10% of this sum or $7,076.17). Appellees' reiterate these same calculations in their praecipes for writs of execution. *See* Praecipes for Writs of Execution, filed 10/6/89.

deliberately and with intention. In determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract do not assume that its language was chosen carelessly. Neither can it be assumed that the parties were ignorant of the meaning of the language employed.... [R]esort to the plain meaning of language hinders parties dissatisfied with their agreement from creating a myth as to the true meaning of the agreement through subsequently exposed extrinsic evidence.... In holding that an ambiguity is present in an agreement, a court must not rely upon a strained contrivancy to establish one; scarcely an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity. Thus, the meaning of language cannot be distorted to establish the ambiguity.

*Stewart v. McChesney,* 498 Pa. at 51–53, 444 A.2d at 662–663 (citations and quotation marks omitted). This court has further observed that "[a] contract is not ambiguous if the court can determine its meaning with a knowledge of the facts on which its meaning depends. The fact that the parties do not agree upon the proper interpretation does not necessarily render the contract ambiguous." *Vogel v. Berkley,* 354 Pa.Super. at 297, 511 A.2d at 881 (citation omitted). *Accord Z & L Lumber Co. of Atlasburg v. Nordquist,* 348 Pa.Super. at 586, 502 A.2d at 700.

The terms of the judgment notes were clear and unambiguous, and it was improper for the trial court to rely upon extrinsic evidence to distort the plain meaning of the language to establish an ambiguity. The trial court further erred in permitting the jury to consider extrinsic evidence to explain the parties' intent and in failing to appropriately instruct the jury regarding the calculation of attorney's fees. Although such defects would ordinarily require the grant of a new trial, the errors in this case only affected the amount of the jury's verdict and can thus be alleviated by reassessing the award of attorney's fees. We further observe that appellant is not contesting the jury's findings regarding his liability for the debt; rather, appellant only requests that the attorney's fees

be determined in the manner provided in the judgment notes. The judgments are therefore vacated and these matters are remanded to the trial court for the recalculation of attorney's fees at a rate of 10% of the unpaid balance remaining on the principal indebtedness.[4]

Appellant next challenges the trial court's determination that the parties agreed upon the payment of compound interest. In analyzing this issue, we note that interest is compounded when it is added to the principal, the result of which is treated as a new principal for calculating the interest due for the next term. 20 Pennsylvania Law Encyclopedia § 21 at 40. *See also Buck v. Mutual Building & Loan Association of Altoona,* 49 Pa.Super. 128, 132 (1912) (indicating that compounding of interest exists where interest is added to the principal and then interest is charged on the aggregate). It also has been recognized that interest is not compounded in situations where a payment is applied first to the interest due and second to the reduction of principal, with the interest for the next term computed on the remaining principal. *See* 20 Pennsylvania Law Encyclopedia § 21 at 41; *Ralph Myers Contracting Corp. v. Commonwealth of Pennsylvania, Department of Transportation,* 496 Pa. 197, 204, 436 A.2d 612, 615 (1981); *Buck v. Mutual Building & Loan Association of Altoona,* 49 Pa.Super. at 130–132. Our Supreme Court has further indicated that "[i]t is fairly well established that the law in this Commonwealth frowns upon compound interest and as such will only permit compound interest on a debt when the parties have provided for it by agreement or a statute expressly authorizes it." *Powell v. Retirement Board of Allegheny,* 431 Pa. 396, 405–406, 246 A.2d 110, 115 (1968). *Accord Ralph Myers Contracting Corp. v. Commonwealth of Pennsylvania, Department of Transpor-*

---

4. Evidence adduced at trial indicated that at that time, the unpaid principal remaining on the Katzeff note was $65,398.47 and the unpaid principal remaining on the Miller note was $70,761.72 because no further payments were received after February, 1989. *See* N.T. 1/14/92–1/16/92 at 48 and 96; Appendices C and D (revised amortization schedules). The trial court is directed to utilize these principal amounts in its calculations.

*tation*, 496 Pa. at 201, 436 A.2d at 614. We must therefore examine the documents encompassing the parties' agreement to ascertain whether the parties intended to provide for the payment of compound interest.

██ · The judgment notes provide for the payment of interest at a rate of 10% per annum. Although the notes do not indicate whether the interest was to be compounded, the judgment notes do contain a specific installment plan for repaying the debt which is set forth in the amortization schedules. *See* Appendices A–D (amortization schedules). The amortization schedules demonstrate that the amount of interest which has accrued on the debt is based only upon the amount of the unpaid principal balance. *See id.* As we previously observed, the parties provided that the principal balance is to be calculated by subtracting the monthly principal payment from the unpaid principal balance remaining on the debt. *See id.* Thus, the principal balance only involves the principal amount of the debt less any payments of principal thereon and does not include any accrued interest. Because interest is only calculated on the amount of the unpaid principal rather than on the amount of the unpaid principal plus interest, the interest is not compounded. *See* 20 Pennsylvania Law Encyclopedia § 21 at 40 and *Buck v. Mutual Building & Loan Association of Altoona, supra.*

We further note that the amortization schedules in this case are substantially similar to the repayment plan at issue in *Buck v. Mutual Building & Loan Association of Altoona, supra,* in which the parties' agreed to pay the principal of the loan in monthly installments together with interest accruing thereon. In evaluating the payment schedule in *Buck,* this court concluded that it did not provide for the payment of compound interest but followed the accepted rule in which a partial payment on a contract bearing interest is to be applied first to the accrued interest with the balance applied towards the reduction of principal.

There is no significant difference between the payment agreement in *Buck* and the amortization schedules present in

this case and our reasoning therein compels the same conclusion here: the judgment notes and amortization schedules simply do not provide for the payment of compound interest. Because the parties' never agreed to the payment of compound interest on the debt, the trial court erred in permitting the jury to award compound interest. Consequently, the judgments must be vacated and remanded for recalculation of the interest.[5]

Judgments vacated. Remanded for further proceedings consistent with the foregoing discussion. Jurisdiction relinquished.

### APPENDIX A

AMORTIZATION SCHEDULE FOR NOTE FROM
ANTHONY FAZIO TO DAVID KATZEFF,
DATED JUNE 27, 1986, IN THE PRINCIPAL
AMOUNT OF $147,709.92, TOGETHER WITH
INTEREST AT 10% PER ANNUM

| DATE | PAYMENT | INTEREST | PRINCIPAL | PRINCIPAL BALANCE |
|---|---|---|---|---|
| | | | | $147,709.92 |
| 07–27–86 | $4,763.85 | $1,230.92 | $3,532.93 | 144,176.99 |
| 08–27–86 | 4,763.85 | 1,201.47 | 3,562.38 | 140,614.61 |
| 09–27–86 | 4,763.85 | 1,171.79 | 3,592.06 | 137,022.55 |
| 10–27–86 | 4,763.85 | 1,141.85 | 3,622.00 | 133,400.55 |
| 11–27–86 | 4,763.85 | 1,111.67 | 3,652.18 | 129,748.37 |
| 12–27–86 | 4,763.85 | 1,081.24 | $3,682.61 | $126,065.76 |
| 01–27–87 | 4,763.85 | 1,050.55 | 3,713.30 | 122,352.46 |
| 02–27–87 | 4,763.85 | 1,019.60 | 3,744.25 | 118,608.21 |
| 03–27–87 | 4,763.85 | 988.40 | 3,775.45 | 114,832.76 |
| 04–27–87 | 4,763.85 | 956.94 | 3,806.91 | 111,025.85 |
| 05–27–87 | 4,763.85 | 925.22 | 3,838.63 | 107,187.22 |
| 06–27–87 | 4,763.85 | 893.23 | 3,870.62 | 103,316.60 |
| 07–27–87 | 4,763.85 | 860.97 | 3,902.88 | 99,413.72 |

5. Upon remand, the trial court is again directed to utilize the unpaid balances in the principal sums of $65,398.47 and $70,761.72, respectively owed to Mr. Katzeff and Mr. Miller, in determining the amount of interest to which appellees are entitled.

68

| DATE | PAYMENT | INTEREST | PRINCIPAL | PRINCIPAL BALANCE |
|------|---------|----------|-----------|-------------------|
| 08–27–87 | 4,763.85 | 828.45 | 3,935.40 | 95,478.32 |
| 09–27–87 | 4,763.85 | 795.65 | 3,968.20 | 91,510.12 |
| 10–27–87 | 4,763.85 | 762.58 | 4,001.27 | 87,508.85 |
| 11–27–87 | 4,763.85 | 729.24 | 4,034.61 | 83,474.24 |
| 12–27–87 | 4,763.85 | 695.62 | 4,068.23 | 79,406.01 |
| 01–27–88 | 4,763.85 | 661.72 | 4,102.13 | 75,303.88 |
| 02–27–88 | 4,763.85 | 627.53 | 4,136.32 | 71,167.56 |
| 03–27–88 | 4,763.85 | 593.06 | 4,170.79 | 66,996.77 |
| 04–27–88 | 4,763.85 | 558.31 | 4,205.54 | 62,791.23 |
| 05–27–88 | 4,763.85 | 523.26 | 4,240.59 | 58,550.64 |
| 06–27–88 | 4,763.85 | 487.92 | 4,275.93 | 54,274.71 |
| 07–27–88 | 4,763.85 | 452.29 | 4,311.56 | 49,963.15 |
| 08–27–88 | 4,763.85 | 416.36 | 4,347.49 | 45,615.66 |
| 09–27–88 | 4,763.85 | 380.13 | 4,383.72 | 41,231.94 |
| 10–27–88 | 4,763.85 | 343.60 | 4,420.25 | 36,811.69 |
| 11–27–88 | 4,763.85 | 306.76 | 4,457.09 | 32,354.60 |
| 12–27–88 | 4,763.85 | 269.62 | 4,494.23 | 27,860.37 |
| 01–27–89 | 4,763.85 | 232.17 | 4,531.68 | 23,328.69 |
| 02–27–89 | 4,763.85 | 194.41 | 4,569.44 | 18,759.25 |
| 03–27–89 | 4,763.85 | 156.33 | 4,607.52 | 14,151.73 |
| 04–27–89 | 4,763.85 | 117.93 | 4,645.92 | 9,505.81 |
| 05–27–89 | 4,763.85 | 79.22 | 4,684.63 | 4,821.18 |
| 06–27–89 | 4,861.36 | 40.18 | 4,821.18 | 0.00 |

APPENDIX B

AMORTIZATION SCHEDULE FOR NOTE FROM
ANTHONY FAZIO TO CHESTER MILLER,
DATED JUNE 27, 1986, IN THE PRINCIPAL
AMOUNT OF $154,912.25, TOGETHER WITH
INTEREST AT 10% PER ANNUM

| DATE | PAYMENT | INTEREST | PRINCIPAL | PRINCIPAL BALANCE |
|---|---|---|---|---|
| | | | | $154,912.25 |
| 07–27–86 | $4,998.58 | $1,290.94 | $3,707.64 | 151,204.61 |
| 08–27–86 | 4,998.58 | 1,260.04 | 3,738.54 | 147,466.07 |
| 09–27–86 | 4,998.58 | 1,228.88 | 3,769.70 | 143,696.37 |
| 10–27–86 | 4,998.58 | 1,197.47 | 3,801.11 | 139,895.26 |
| 11–27–86 | 4,998.58 | 1,165.79 | 3,832.79 | 136,062.47 |
| 12–27–86 | 4,998.58 | 1,133.85 | 3,864.73 | 132,197.74 |
| 01–27–87 | 4,998.58 | 1,101.65 | 3,896.93 | 128,300.81 |
| 02–27–87 | 4,998.58 | 1,069.17 | 3,929.41 | 124,371.40 |
| 03–27–87 | 4,998.58 | 1,036.43 | 3,962.15 | 120,409.25 |
| 04–27–87 | 4,998.58 | 1,003.41 | 3,995.17 | 116,414.08 |
| 05–27–87 | 4,998.58 | 970.12 | 4,028.46 | 112,385.62 |
| 06–27–87 | 4,998.58 | 936.55 | 4,062.03 | 108,323.59 |
| 07–27–87 | 4,998.58 | 902.70 | 4,095.88 | 104,227.71 |
| 08–27–87 | 4,998.58 | 868.56 | 4,130.02 | 100,097.69 |
| 09–27–87 | 4,998.58 | 834.15 | 4,164.43 | 95,933.26 |
| 10–27–87 | 4,998.58 | 799.44 | 4,199.14 | 91,734.12 |
| 11–27–87 | 4,998.58 | 764.45 | 4,234.13 | 87,499.99 |
| 12–27–87 | 4,998.58 | 729.17 | 4,269.41 | 83,230.58 |
| 01–27–88 | 4,998.58 | 693.59 | 4,304.99 | 78,925.59 |
| 02–27–88 | 4,998.58 | 657.71 | 4,340.87 | 74,584.72 |
| 03–27–88 | 4,998.58 | 621.54 | 4,377.04 | 70,207.68 |
| 04–27–88 | 4,998.58 | 585.06 | 4,413.52 | 65,794.16 |
| 05–27–88 | 4,998.58 | 548.28 | 4,450.30 | 61,343.86 |
| 06–27–88 | 4,998.58 | 511.20 | 4,487.38 | 56,856.48 |
| 07–27–88 | 4,998.58 | 473.80 | 4,524.78 | 52,331.70 |

70

| 08-27-88 | 4,998.58 | 436.10 | 4,562.48 | 47,769.22 |
| 09-27-88 | 4,998.58 | 398.08 | 4,600.50 | 43,168.72 |
| 10-27-88 | 4,998.58 | 359.74 | 4,638.84 | 38,529.88 |
| 11-27-88 | 4,998.58 | 321.08 | 4,677.50 | 33,852.38 |
| 12-27-88 | 4,998.58 | 282.10 | $4,716.48 | $29,135.90 |
| 01-27-89 | 4,998.58 | 242.80 | 4,755.78 | 24,380.12 |
| 02-27-89 | 4,998.58 | 203.17 | 4,795.41 | 19,584.71 |
| 03-27-89 | 4,998.58 | 163.21 | 4,835.37 | 14,749.34 |
| 04-27-89 | 4,998.58 | 122.91 | 4,875.67 | 9,873.67 |
| 05-27-89 | 4,998.58 | 82.28 | 4,916.30 | 4,957.37 |
| 06-27-89 | 4,998.68 | 41.31 | 4,957.37 | 0.00 |

APPENDIX C

AMORTIZATION SCHEDULE FOR NOTE FROM
ANTHONY FAZIO TO DAVID KATZEFF
INTEREST AT 10% PER ANNUM

| DATE | PAYMENT | INTEREST | PRINCIPAL | PRINCIPAL BALANCE |
|---|---|---|---|---|
|  |  |  |  | $95,478.32 |
| 10/27/87 | $2,500.00 | $1591.30(60 days) | $908.70 | 94,569.62 |
| 11/27/87 | 2,500.00 | 788.08 | 1711.92 | 92,857.70 |
| 12/27/87 | 2,500.00 | 773.81 | 1726.19 | 91,131.52 |
| 01/27/88 | 2,500.00 | 759.42 | 1740.58 | 89,390.93 |
| 02/27/88 | 2,500.00 | 744.92 | 1755.08 | 87,635.85 |
| 03/27/88 | 2,500.00 | 730.29 | 1769.71 | 85,866.14 |
| 04/27/88 | 2,500.00 | 715.55 | 1784.45 | 84,081.69 |
| 05/27/88 | 2,500.00 | 700.68 | 1799.32 | 82,282.37 |
| 06/27/88 | 2,500.00 | 685.68 | 1814.32 | 80,468.05 |
| 07/27/88 | 2,500.00 | 670.56 | 1829.44 | 78,638.61 |
| 08/27/88 | 2,500.00 | 655.32 | 1844.68 | 76,793.93 |
| 09/27/88 | 2,500.00 | 639.94 | 1860.06 | 74,933.87 |
| 10/27/88 | 2,500.00 | 624.44 | 1875.56 | 73,058.31 |
| 11/27/88 | 2,500.00 | 608.81 | 1891.19 | 71,167.12 |
| 12/27/88 | 2,500.00 | 593.05 | 1906.95 | 69,260.17 |
| 01/27/89 | 2,500.00 | 577.16 | 1922.84 | 67,337.33 |
| 02/27/89 | 2,500.00 | 561.14 | 1938.86 | 65,398.47 |
| 03/27/89 | 2,500.00 | 544.92 | 1955.08 | 63,443.39 |
| 04/27/89 | 2,500.00 | 528.69 | 1971.31 | 61,472.08 |
| 05/27/89 | 2,500.00 | 512.26 | 1987.74 | 59,484.34 |
| 06/27/89 | 59,980.04 | 495.70 | 59,484.34 | 00 |
|  |  |  | 14,501.72 | 95,478.32 |

APPENDIX D
AMORTIZATION SCHEDULE FOR NOTE FROM
ANTHONY FAZIO TO CHESTER MILLER
INTEREST AT 10% PER ANNUM

| DATE | PAYMENT | INTEREST | PRINCIPAL | PRINCIPAL BALANCE |
|------|---------|----------|-----------|-------------------|
| | | | | $100,097.69 |
| 10/27/87 | $ 2,500.00 | $ 1,668.29 | $ 831.71 | 99,265.98 |
| 11/27/87 | 2,500.00 | 827.21 | 1672.79 | 97,593.19 |
| 12/27/87 | 2,500.00 | 813.27 | 1686.73 | 95,906.46 |
| 01/27/88 | 2,500.00 | 799.22 | 1700.78 | 94,205.68 |
| 02/27/88 | 2,500.00 | 785.04 | 1714.96 | 92,490.72 |
| 03/27/88 | 2,500.00 | 770.75 | 1729.25 | 90,761.47 |
| 04/27/88 | 2,500.00 | 756.34 | 1743.66 | 89,017.81 |
| 05/27/88 | 2,500.00 | 741.81 | 1758.19 | 87,259.62 |
| 06/27/88 | 2,500.00 | 727.16 | $1772.84 | $85,486.78 |
| 07/27/88 | 2,500.00 | 712.38 | 1787.62 | 83,699.16 |
| 08/27/88 | 2,500.00 | 697.49 | 1802.51 | 81,896.05 |
| 09/27/88 | 2,500.00 | 682.47 | 1817.53 | 80,079.12 |
| 10/27/88 | 2,500.00 | 667.32 | 1832.68 | 78,246.44 |
| 11/27/88 | 2,500.00 | 652.05 | 1847.95 | 76,398.49 |
| 12/27/88 | 2,500.00 | 636.65 | 1863.35 | 74,535.14 |
| 01/27/89 | 2,500.00 | 621.12 | 1878.88 | 72,656.26 |
| 02/27/89 | 2,500.00 | 605.46 | 1894.54 | 70,761.72 |
| 03/27/89 | 2,500.00 | 589.68 | 1910.32 | 68,851.40 |
| 04/27/89 | 2,500.00 | 573.76 | 1926.24 | 66,925.16 |
| 05/27/89 | 2,500.00 | 557.70 | 1942.30 | 64,982.86 |
| 06/27/89 | 65,524.38 | 541.52 | 64,982.86 | 00 |
| | | | 15,426.69 | 100,097.69 |