639 A.2d 37

**Charles A. HALPIN, Jr. and Robert J. Courtney, Appellees**

v.

**LaSALLE UNIVERSITY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1993.

Filed Feb. 3, 1994.

Reargument Denied April 13, 1994.

478

David H. Marion, Philadelphia, for appellant.

Robert A. McAteer, Philadelphia, for appellees.

Before WIEAND, CIRILLO and HESTER, JJ.

WIEAND, Judge:

In this declaratory judgment action, the trial court held that contracts of employment between La Salle University, the employer, and Charles A. Halpin, Jr. and Robert J. Courtney, professors, conferred employment upon the professors for the remainder of their academic lives so as to render them exempt

from the university's mandatory retirement program. The university appealed. After careful review, we reverse.

Halpin and Courtney began their teaching careers at La Salle University during the 1940's. On March 20, 1956, the university published in the *Faculty Bulletin* a policy on tenure, and, on March 21, 1956, Halpin and Courtney were granted tenure according to the conditions set forth in the *Faculty Bulletin.*

On February 13, 1964, Courtney received written notice that he was to be promoted to the rank of professor. The notice provided that the terms of the appointment would be determined by contract and stated that by promoting a faculty member to the rank of professor, "the College [was] extending to him an invitation to continue as a member of the faculty for the remainder of his active academic life." On February 28, 1964, the university and Courtney entered into a written employment contract which provided that Courtney was appointed professor in the Department of Political Science for the period from September 15, 1964 to June 15, 1965, at a salary of $10,450.00. The contract stated that "[t]he distinctive rank of 'Professor' is an appointment for life. In the future this document will be a notice of salary adjustment, if any." The contract contained both an integration clause and a statement signed by Courtney to the effect that the parties' contract constituted the entire agreement regarding rank, salary and term of appointment.

In February, 1966, Halpin also received notice that he was being promoted to the rank of professor; and on February 28, 1966, he entered into a contract with La Salle University similar to that entered into by Courtney. Halpin's appointment, however, was to the Department of Industry and was for a period from September 15, 1966 to June 15, 1967, at a salary of $11,400.00 per year.

In subsequent years and until 1990, the professors and the university executed annual contracts containing similar language except that (1) the salary was adjusted, and (2) the "appointment for life" clause was omitted.

A retirement policy was adopted by the university subsequent to the appointment of Halpin and Courtney as professors; and in 1982, the university's retirement policy was amended to make retirement mandatory when ranked and tenured members of the faculty reached the age of seventy. During the 1989–1990 and 1990–1991 academic years, Courtney and Halpin, respectively, reached mandatory retirement age and were notified by the university that they would be retired from active faculty status. The professors, contending that they were not subject to the university's mandatory retirement policy, commenced an action for declaratory judgment.

They rely upon the language in their original contracts which granted them the rank of professor and membership in the faculty for the remainder of their academic lives. This, they argue, means they are to be employed as active members of the faculty as long as they are physically and mentally capable of performing the duties of a professor. The subsequent annual contracts, they argue, had no effect on their lifetime tenures and served only to adjust their annual salaries. The university argues, on the other hand, that while the rank of "professor" was a lifetime rank, employment as a member of the faculty was year by year.

The presumption under Pennsylvania law is that the employment relationship is terminable at-will by either party. *Greene v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 543, 526 A.2d 1192, 1196, *allocatur denied,* 517 Pa. 607, 536 A.2d 1331 (1987). See generally: *Scott v. Extracorporeal, Inc.,* 376 Pa.Super. 90, 94, 545 A.2d 334, 336 (1988); *Darlington v. General Electric,* 350 Pa.Super. 183, 188, 504 A.2d 306, 309 (1986). The employee may leave the job for any or no reason and the employer is free to discharge the employee with or without cause. *Greene v. Oliver Realty, Inc., supra* 363 Pa.Super. at 543, 526 A.2d at 1196. The party claiming that an employment agreement is for a definite period has the burden of proving such fact. *Id.* This can be accomplished by clear proof that the parties contracted for a specific duration. *Id.* See also: *Nix v.*

*Temple University of the Commonwealth System of Higher Education*, 408 Pa.Super. 369, 375, 596 A.2d 1132, 1135 (1991).

Here, none of the parties contend that employment was at will. There is dispute, however, regarding the length of the term for which employment was contracted.

▇ The interpretation of a contract is a question of law. In deciding an issue of law, an appellate court need not defer to the conclusions of the trial court. *American States Ins. Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 181, 628 A.2d 880, 886 (1993); *Katzeff v. Fazio*, 427 Pa.Super. 55, 60, 628 A.2d 425, 428 (1993). When interpreting a contract, the court's paramount goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. *Toombs NJ Inc. v. Aetna Casualty & Surety Co.*, 404 Pa.Super. 471, 476–477, 591 A.2d 304, 307 (1991); *Greene v. Oliver Realty, Inc., supra* 363 Pa.Super. at 539, 526 A.2d at 1194. When the words used in a contract are ambiguous, a court may examine the surrounding circumstances to ascertain the intent of the parties. *Greene v. Oliver Realty, Inc., supra* at 539, 526 A.2d at 1194. When the language of a writing is clear and unequivocal, however, its meaning must be determined by its contents alone. *Id.* A written contract which is deemed unambiguous "must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings are admissible to explain or vary the terms of the contract." *McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 349, 534 A.2d 115, 117–118 (1987), *aff'd*, 519 Pa. 439, 548 A.2d 1223 (1988) (citations omitted). When determining whether a contract is ambiguous, a court must view the contract as a whole and not in discrete units. *O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.*, 427 Pa.Super. 456, 461, 629 A.2d 957, 960 (1993).

▇ The contracts in the instant case, when construed as a whole, are clear and unambiguous. It was unnecessary to refer to the language appearing in the 1956 *Faculty Bulletin*

or letters by the university to members of the faculty to ascertain the parties' intent. The fact that parties to a contract disagree upon its proper interpretation does not necessarily render the writing ambiguous. *Katzeff v. Fazio, supra* at 64, 628 A.2d at 430. "[R]esort to the plain meaning of language hinders parties dissatisfied with their agreement from creating a myth as to the true meaning of the agreement through subsequently exposed extrinsic evidence.... In holding that an ambiguity is present in an agreement, a court must not rely upon a strained contrivancy to establish one; scarcely an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity." *Id.* at 64, 628 A.2d at 429–430, quoting *Steuart v. McChesney,* 498 Pa. 45, 51–53, 444 A.2d 659, 662–663 (1982).

██ University faculty members were appointed a rank or title according to their educational background, teaching experience and contributions to the college community. These ranks included lecturer, instructor, assistant professor, associate professor and professor. The language of the parties' contracts provided that once a faculty member was appointed to the rank of professor, he or she was entitled to retain that rank for the remainder of his life. Future contracts could be used to adjust salary, but future contracts could not affect or change a faculty member's status as a professor. This did not imply that after appointment to the rank of professor, a faculty member was guaranteed employment for life. On this the contract was clear and unequivocal. The duration of employment in each contract was for a period of one academic year; and the salary for that year of employment was determined by the terms of the contract. This was the relationship established by the parties in their original contracts and in each annual contract executed thereafter.

██ To construe the original or any subsequent contract as guaranteeing employment until physical or mental incompetency of a professor would be inconsistent with the express terms of each agreement entered by the parties. The language extending the rank of professor for life cannot be

interpreted to annul the clear language of the employment contract which limited the term thereof to the then current academic year. One portion of an agreement cannot be interpreted to annul another part of the same agreement. *Laudig v. Laudig,* 425 Pa.Super. 228, 234, 624 A.2d 651, 654 (1993). Rather, a court will endeavor to interpret the parties' contract to effectuate the result reasonably intended by the parties. *Id.*

Because the contracts in this case clearly specify the terms of employment granted, we will not ignore the parties' reasonable intent in favor of a contract of indefinite employment. Our interpretation is consistent with Pennsylvania decisions which show a clear reluctance, in the absence of an agreement establishing a contrary intent, to interpret contracts of employment as guaranteeing employment for life. See: *Curran v. Children's Service Center of Wyoming County, Inc.,* 396 Pa.Super. 29, 34, 578 A.2d 8, 10 (1990), *allocatur denied,* 526 Pa. 648, 585 A.2d 468 (1991).

Reversed and remanded for the entry of a decree consistent with the foregoing Opinion. Jurisdiction is not retained.