423 A.2d 721

**Robert J. DEAR and Ruth Dear, Appellants,**

**v.**

**HOLLY JON EQUIPMENT COMPANY and Associates Financial Services Company, Inc.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed Dec. 1, 1980.

William G. Blasdel, Jr., Philadelphia, for appellants.

William A. Harvey, Philadelphia, for appellees.

Before PRICE, CAVANAUGH and WATKINS, JJ.

CAVANAUGH, Judge:

In March, 1975 the appellants purchased a new Diamond Reo tri–axle dump truck from Holly Jon Equipment Company. The cash price of the vehicle was $44,564.00, including sales tax. The appellants received credit for a trade–in of their old dump truck in the amount of $12,100.00. The balance of $32,464.00 plus credit life insurance in the amount of $358.00 was to be financed by Holly Jon Equipment Company over a four–year period. The total to be financed was $32,822.00 and Holly Jon prepared the necessary sales papers and financing documents. At the time of the sale, the Motor Vehicle Sales Finance Act permitted a finance charge in the amount of seven and a half percent per year.[1] The seller determined the finance charge by multiplying the principal amount to be financed ($32,822.00) by seven and one half percent and multiplying the result by the number of years the contract was to be run (4 years) and arrived at a finance charge of $9,846.60. The finance charges were added to the principal obligation of $32,822.00 for a total payback figure of $42,668.00. The monthly payments were calculated by dividing the $42,668.60 by 48 to arrive at a monthly payment of $888.93.

Appellants, at the time of purchasing their vehicle, were in the same position as many buyers of new vehicles. The buyer generally waits while the salesman makes complex calculations, the nature of which are seldom understood by the buyer, to arrive at that important figure known to the consumer as the monthly payment. What appellants may not have been aware of in this case was that the seller was determining the finance charge by a method known as the "add–on" method. Under this method the finance charge is

1. Act of June 28, 1947, P.L. 1110 § 1 et seq., 69 P.S. § 601 et seq.

calculated at the beginning of the term of an installment sales contract by multiplying the principal amount by the rate specified in the contract and multiplying that figure by the number of years of the contract. Another method of determining interest is to use the simple interest method which is computed on the declining balance of principal indebtedness and which is always less, in total, than the add–on rate.

Shortly after the sale was completed Holly Jon Equipment Company assigned all of its interest under the contract to Associates Financial Services Company, Inc., a third–party defendant in the court below and an appellee in this appeal.

In 1978 appellants commenced an action in assumpsit against Holly Jon Equipment Company alleging that Holly Jon had calculated the amount of interest due in violation of the interest rate allowed under the Motor Vehicle Sales Finance Act. Appellants sought to recover three times any excess interest paid, attorney fees and costs in accordance with the provisions of the Usury Act.[2] Appellees filed motions for summary judgment which were granted by the court below. Appellants have appealed to this Court from the order granting summary judgment in favor of appellees.

Appellants contend that the amount of interest charged was in excess of the interest rate allowed under the applicable provisions of the Motor Vehicle Sales Finance Act in that it exceeded an annual percentage rate of seven and one half percent. The basic facts in this case are undisputed and it is agreed that the dump truck purchased by appellants was a Class IV vehicle. The Motor Vehicle Sales Finance Act provides in 69 P.S. § 619 A as follows:

A seller licensed under the provisions of this act shall have the power and authority to charge, contract for, receive or collect a finance charge, as defined in this act, on any installment sale contract covering the retail sale of a motor vehicle in this Commonwealth, which shall not

2. Act of January 30, 1974, P.L. 13, No. 6, 41 Pa.C.S. § 101 et seq.

exceed the rates indicated for the respective classification of motor vehicles as follows:

. . . . .

Class IV. New motor vehicles having a cash price of ten thousand dollars ($10,000) or more and used primarily for commercial purposes, and except new trucks or truck tractors having a manufacturer's gross vehicular weight of fifteen thousand (15,000) pounds or more and new semi–trailers or trailers designed for use in combination with truck tractors, seven and one–half percent (7½%) per year.

The Act defines "finance charge" at 69 P.S. § 603(14) as follows:

"Finance charge" shall mean the amount of the consideration in excess of the cash price which the buyer is required to pay to the seller for the privilege of purchasing a motor vehicle under an installment sale contract, or for the credit extended by the seller to the buyer in conjunction with the sale of a motor vehicle under an installment sale contract, or it shall mean the differential between the cash sale price of the motor vehicle and the installment sale price, exclusive of insurance premium costs and other costs necessary or incidental to an installment sale, which are specifically authorized by this act to be included in an installment sale contract.

The Act also provides in 69 P.S. § 619 B, that "[s]uch finance charge shall be computed on the principal amount financed as determined under Section 14–B–6 of this Act," which provides that the "[p]rincipal amount financed . . . shall be the total of the unpaid cash price balance (Item 3) plus the insurance premium costs (Item 4) plus other costs (Item 5), for which the seller agrees to extend credit to the buyer." 69 P.S. § 614 B(6). The unpaid cash balance is the difference between the cash price and the down payment. 69 P.S. § 614 B(3). Appellant's initial contention is that the amount of interest charged was in excess of the interest rate allowed under the applicable provisions of the Motor Vehicle

Sales Finance Act, in that it exceeded an annual percentage rate of seven and a half percent. In interpreting a statute the intent of the legislature prevails and in determining that intent, every provision must be given effect. Statutory Construction Act of December 6, 1972, P.L. 1339, 1 Pa.C.S.A. § 1921(a). *See also City of Wilkes–Barre v. Ebert*, 22 Pa.Cmwlth. 356, 361, 349 A.2d 520, 522 (1975). Appellant contends that under the Act interest must be calculated by using the simple interest method. If the legislature intended simple interest to apply in 69 P.S. § 619 A, it could readily have provided for this as it did in 69 P.S. § 620 C, which provides for the refinancing of an installment sales contract and states, *inter alia* :

> . . . that the word loan herein shall not include nor this act prohibit, a rearrangement of payments under the installment sale contract by a refinance transaction involving a restoration of certain installment payments made under the contract, *but the refinance charge on such amount restored may not be more than six percent per annum, simple interest* ; . . . (emphasis added).

The Act itself gives further indication that simple interest was not intended in 69 P.S. § 619 A since it provides in 69 P.S. § 622 for the refund of "unearned finance charge[s]" in the event of a prepayment of the contract.[3] Where simple

3. Act of June 28, 1947, P.L. 1110, 69 P.S. § 622 states:
   A. The buyer, notwithstanding the provisions of any installment sale contract, shall have the privilege of prepaying at any time all or any part of the unpaid time balance under an installment sale contract.
   B. Whenever all of the time balance is liquidated prior to maturity by prepayment, refinancing or termination by surrender or repossession and re–sale of the motor vehicle, the holder of the installment sale contract shall rebate to the buyer immediately the unearned portion of the finance charge. Rebate may be made in cash or credited to the amount due on the obligation of the buyer.
   C. The unearned finance charge to be rebated to the buyer shall represent at least as great a proportion of the total finance charge as the sum of the periodical time balances after the date of prepayment bears to the sum of all the periodical time balances under the schedule of payments in the original agreement: [subject to provisions not here pertinent].

interest is charged there is no unearned interest since interest is paid only as it accrues, and then on a declining principal balance. For example, on the ordinary conventional home mortgage interest is calculated at the simple rate and payment is amortized over the term of the mortgage.[4] Each equal monthly payment contains within it payments in unequal amounts of principal and interest, and each month the amount paid toward principal reduction increases and the interest payment decreases since it is calculated on a continually declining principal balance. If a monetary obligation at simple interest is prepaid there is no refund of unearned interest (or finance charge) by the obligee, since there is none. Interest is paid each month only on the principal balance remaining.

If we adopted appellant's interpretation of 69 P.S. § 619 A requiring that the finance charge be calculated by using the simple interest method, 69 P.S. § 622 would be a meaningless provision. Section 622 clearly refers to the refund of a finance charge calculated on the add–on basis. A simple example will illustrate this. If a buyer purchased a new commercial vehicle and financed the sum of $12,000.00, he would fall within the provisions of 69 P.S. § 619 A applicable to vehicles used mainly for commercial purposes and referred to as Class IV vehicles. Assume that the term of the obligation is four years and the finance charge is seven and a half percent per year. The Act does not require that the finance charge be seven and one half percent per year, however, it does not permit a higher rate. Calculating the finance charge by the add–on method, we have the following:

4. "An 'amortization plan' for the payment of an indebtedness is one where there are partial payments of the principal, and accrued interest, at stated periods for a definite time, at the expiration of which the entire indebtedness will be extinguished." Black's Law Dictionary, Fifth Edition, page 76 (1979). *See also Farmers' Bank and Trust Co. of Hummelstown v. Commonwealth of Pennsylvania Department of Banking*, 43 Pa.Cmwlth. 325, 402 A.2d 323 (1979).

$12,000.00   (Principal amount to be financed)
   x .075    (Annual rate for finance charge)
 $900.00
     x 4     (Term of the obligation)
$3,600.00    (Finance charge)

The finance charge would be $3,600.00 added to $12,000.00, resulting in the total amount to be financed of $15,600.00. The payments would be $325.00 per month for forty–eight months.  If after three years (thirty-six payments) the buyer paid off his entire indebtedness, he would be entitled to a refund of the "unearned finance charge."  The Act states in 69 P.S. § 622 C:

> The unearned finance charge to be rebated to the buyer shall represent at least as great a proportion of the total finance charge as the sum of the periodical time balances after the date of prepayment bears to the sum of all the periodical time balances under the schedule of payments in the original agreement . . .

Under our hypothetical example the buyer is entitled to a rebate of one–quarter of the finance charges since his payments represented three–quarters of the scheduled payments.  Accordingly, he is entitled to a refund of $900.00 of the finance charge.  The balance which he would owe at the time of prepayment based on the original contract would be $3,900.00 less the prepayment rebate of $900.00 to cover the unearned finance charges.

■  Construction of a statute by those charged with its administration is entitled to great weight and should not be disregarded unless it is clear that their interpretation is incorrect.  *Longo Liquor License Case*, 183 Pa.Super. 504, 132 A.2d 899 (1957).  *See also* Statutory Construction Act, 1 Pa.C.S.A. § 1921.  The Motor Vehicle Sales Finance Act provides for an administrator with broad authority over installment sales of motor vehicles.  69 P.S. § 611.  The Act designates the Department of Banking of the Commonwealth of Pennsylvania as the Administrator.  69 P.S. § 603(18).  An affidavit was submitted by the Director of the Consumer Credit Bureau of the Department of Banking

of the Commonwealth of Pennsylvania. The director stated that it has been the policy of the Pennsylvania Department of Banking since the enactment of the Motor Vehicle Sales Finance Act in 1947 to accept computation of the rate of finance charges set forth in the statute as properly made on an add–on basis rather than a simple interest basis.[5] If the Pennsylvania Department of Banking has interpreted the Motor Vehicle Sales Finance Act for over thirty years in a way that the legislature did not intend, then the legislature would have amended the statute. *Krivosh v. City of Sharon*, 205 Pa.Super. 498, 211 A.2d 109 (1965).

The legislature is fully aware of the distinction between add–on interest and simple interest. When the original Act was written in 1947 it did not provide for Class IV vehicles, which are new commercial vehicles costing ten thousand dollars or more. Originally the Act included all new motor vehicles within Class I and the finance charge was limited to six percent. In 1974 the Act was amended to provide for Class IV vehicles. Class V vehicles were added in 1975 and these are "new mobile homes." At the time Class V vehicles were added the legislature knew that interest under the Act was calculated on an add–on method. The 1975 Legislative Journal–House, page 731, contains the following:

[Question by Mr. Eckensberger]

Do I understand that the maximum finance charge presently levied by the Motor Vehicle Sales Finance Act is 6 percent add–on, or approximately 11.5%?

[Answer by Mr. Bennett, Sponsor]

That is true, Mr. Speaker . . . that Motor Vehicle Sales Finance Act states, under present law, that it is a six percent interest add–on which is as you said, Mr. Speaker, 11.5%.

---

**5.** The affidavit of the Secretary of Commerce also stated:

[I]t is the position of the Department of Banking that it is lawful for a licensee in Pennsylvania to impose a finance charge in connection with the time sale of motor vehicles at the rate set forth in the Motor Vehicle Sales Finance Act on an "add–on" basis, rather than a "simple" basis, even though the computation of the finance charge on an add–on basis results in a higher effective yield.

In this case the parties agree that the effective interest rate of seven and a half percent per year calculated on an add–on basis is 13.5%.

The debate between simple interest and add–on interest goes back many years. A Law Review article in 1953, *Recent Statutory Regulation of Consumer Sales Financing as Exemplified by Automobile Sales Acts*, 101 University of Pennsylvania Law Review 530, 536 states:

> The finance charge in the installment sales statutes is generally calculated as a fixed yearly percentage of the original unpaid balance of the sale. [The writer cites 69 P.S. § 619 B and also an Ohio statute.] Since the unpaid balance declines as installment payments are made, but the interest rate remains constant, the original percentage upon which the charge is calculated is about one–half the actual yearly interest rate.

There is no doubt that the writer interprets the Pennsylvania statute dealing with automobile financing as calculating the finance charge on the add–on method.

While this case is one of first impression in this Commonwealth, a similar issue was raised in *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 93 N.W.2d 690 (1958). That case involved an interpretation of calculation of finance charges under Minnesota's Motor Vehicle Retail Installment Act. The basic issue was whether the finance charge was to be computed on the basis of the original principal balance for the duration of the indebtedness notwithstanding regular periodic payments, or to be computed on declining balances. The Minnesota statute provided that for a Class I vehicle the time price differential (which our statute refers to as the finance charge) shall not exceed "$8 per $100 per year." The court interpreted this as being eight percent per year and held that the legislature did not intend the interest to be paid on declining balances (simple interest rate calculations) but rather on the original principal balance for the duration of the obligation (the add–on method). The court also pointed out "[t]he record indicates that the banking department of this state has understood the 1957 act as herein interpreted since its inception and likewise that the entire

automobile industry has so understood the provisions of the act." 93 N.W.2d at 698.

■ Appellant contends that the rate of interest charged by appellees violated the usury law.[6] The Usury Act provides "[w]hen a rate of interest for the loan or the use of money, exceeding that provided by this act or otherwise by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over such maximum interest rate." 41 Pa.C.S. § 501. It has been consistently held in Pennsylvania that the usury statute does not apply to a bona fide sale of goods on credit. See Equitable Credit & Discount Co. v. Geier, 342 Pa. 445, 455, 21 A.2d 53, 58 (1941); Equipment Finance, Inc. v. Grannas, 207 Pa.Super. 363, 366, 218 A.2d 81, 82 (1966); Bartholomew v. Northampton National Bank of Easton, 584 F.2d 1288, 1295 (3rd Cir. 1978).

Order affirmed.

6. Act of January 30, 1974 P.L. 13 No. 6, 41 Pa.C.S. § 201 provides: Except as provided in Article III of this act, the maximum lawful rate of interest for the loan or use of money in an amount of fifty thousand dollars ($50,000) or less in all cases where no express contract shall have been made for a less rate shall be six per cent per annum.