476 A.2d 419

COMMONWEALTH of Pennsylvania

v.

Guy J. DePASQUALE, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 3, 1983.

Filed April 19, 1984.

Reargument Denied June 25, 1984.

Petition for Allowance of Appeal Granted Oct. 1, 1984.

580

Linus E. Fenicle, Harrisburg, for appellant.

Theodore B. Smith, III, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and CERCONE, JJ.

WIEAND, Judge:

Guy J. DePasquale was cited for speeding after he had been clocked at 36 m.p.h. in a 25 m.p.h. speed zone on Brentwater Road in East Pennsboro, Cumberland County. On appeal, after having been found guilty by the Court of Common Pleas, DePasquale contends that the Commonwealth's evidence of speed should have been excluded because it was obtained by use of a Model TK 100 Excessive Speed Preventor (TK 100). This device, he argues, was an electronic device whose use, by statute, has been limited to members of the Pennsylvania State Police. The trial court found that the TK 100 was an electrical device which could properly be used by municipal police and that a computation of DePasquale's speed obtained by use thereof was admissible. Finding this computation of speed credible, the trial

court determined that DePasquale was guilty of speeding and imposed an appropriate fine. We affirm.

It is provided by the Vehicle Code, at 75 Pa.C.S. § 3368(c), that:

(1) The rate of speed of any vehicle may be timed on any highway by a police officer using a mechanical or electrical speed timing device.

(2) Electronic devices such as radio-microwave devices (commonly referred to as electronic speed meters or radar) may be used only by members of the Pennsylvania State Police. No person may be convicted upon evidence obtained through the use of such devices unless the speed recorded is six or more miles per hour in excess of the legal speed limit.

We must decide, therefore, whether the TK 100 is an electronic device or an electrical device. If the former, it can be used only by members of the Pennsylvania State Police. If it is an electrical speed timing device, however, it can be used by any police officer.

The science of electronics pertains to the emission, behavior and effects of electrons in vacuums and gases. Webster's New Collegiate Dictionary (1980). Radar has been characterized as an electronic device because it depends upon the emission of electrons as radio-microwaves. It gathers input data electronically by making use of the scientific principle known as the "Doppler effect." This principle describes the resulting change in frequency of radio-microwaves caused by the interference of a moving object. See: Annot., 47 A.L.R.3d 822, 830 (1973). A radio-microwave is transmitted by a radar unit and is received again by the unit after it has been reflected by or bounced from an interfering object. See: *Commonwealth v. Bartley*, 411 Pa. 286, 288, 191 A.2d 673, 674 (1963). Speed is determined by measuring the change in frequency caused by the interfering object. All computations are effected electronically. Radar contains inherent dangers of inaccuracy if not carefully used. It is subject to interference by objects in the environment or by power sources other than

the moving vehicle being checked. See: *Commonwealth v. Bartley, supra;* Annot., 47 A.L.R.3d at 830 n. 15. Thus, the measurement of speed by radar can be and frequently is distorted by objects in the environment or by another moving vehicle. It is because of concerns for possible distortions that the legislature prohibited speeding convictions based on evidence obtained by radar unless the established limit was exceeded by at least six m.p.h.

The problem of inaccuracies caused by distortions does not exist in speed measuring devices which operate electrically. Electricity is a fundamental entity of nature consisting of positive and negative particles, electrons and protons or positrons, usually used in the form of electric currents in a closed circuit. See: Webster's New Collegiate Dictionary (1980).

The TK 100 is a speed recording device which is plugged into the cigarette lighter in a motor vehicle. It uses both electrical and electronic components. The measurement of a vehicle's movement is achieved electrically; only the computation of speed is accomplished electronically. Two sensor tapes, which appear as insulated wires, are secured to the pavement at an intervening distance of six feet. When the wheels of a vehicle cross the sensors, two signals are electrically transmitted to a computing unit. The computer, which operates electronically, determines the amount of time which elapsed while the vehicle was travelling six feet between the sensors and computes the speed of the vehicle. The result is displayed on a digital read-out. An electronic component in the computer consists of a quartz crystal oscillator which establishes the accuracy of the TK 100. Therefore, only a technician trained in electronics can make repairs to the unit. Because input signals are mechanically determined and electrically conveyed, however, the potential for inaccuracy inherent in electronic measuring devices is not present in the TK 100. Moreover, the identity of the vehicle whose speed is being measured is determined mechanically, so that there is no danger of measuring the speed of the wrong vehicle. The signals from the sensors

are emitted and communicated electrically to the calculating unit. Such communication of data does not use radio-microwave emissions. Because the operation is entirely self-contained, the surrounding environment cannot affect the accuracy of the determination of speed.

With respect to the manner in which information is gathered and fed into the computer, therefore, the TK 100 does not function electronically. It relies, rather, on theories of electrical signals emitted when a vehicle's wheels make contact with the sensors. It is this aspect which distinguishes it from electronic devices such as radar which measure speed by making use of radio-microwaves.

■ Because the TK 100 does not rely upon radio-microwave emissions, the Pennsylvania Department of Transportation (PennDOT) has determined that it is an electrical speed timing device. PennDOT has by regulation authorized its use generally and has not confined use thereof to members of the Pennsylvania State Police. PennDOT has been charged with administering the Vehicle Code, 75 Pa. C.S. § 6102(a). Its construction of the statute, therefore, is entitled to great weight and will not be disregarded unless it is clear that its interpretation is incorrect. *Dear v. Holly Jon Equipment Co.*, 283 Pa.Super. 74, 81, 423 A.2d 721, 725 (1980). The evidence presented in this case confirms that the TK 100 is an electrical device for measuring speed and does not measure speed electronically. Its use by police in East Pennsboro, therefore, was not proscribed by statute.

■ Use of the TK 100 to detect speeding violations is not contingent upon enactment of a local ordinance authorizing its use by municipal police. Use of electrical speed timing devices by municipal police officers has been authorized by 75 Pa.C.S. § 3368(c)(1). Additional authorization by municipal ordinance is not required.

■ The provisions of the Vehicle Code, at 75 Pa.C.S. § 6109(a)(14), do not prevent local authorities from exercising their police powers by establishing minimum speed limits on streets and highways within their physical bound-

aries. The establishment of such minimum speed limits, however, must be by ordinance. 75 Pa.C.S. § 6109(b)(1). After such limits have been set by ordinance, there is no requirement that an additional ordinance be enacted to authorize the means for enforcing established limits. The Vehicle Code contains no such requirement, and it would be unreasonable, if not absurd, for this Court to legislate such a requirement. This is particularly so where, as here, the legislature has already enacted legislation specifically authorizing all police officers to use electrical speed timing devices.

The Vehicle Code provides that no traffic ordinance establishing minimum speed limits shall be effective unless notice is given by posting official traffic-control devices. 75 Pa. C.S. § 6109(c). In the instant case, the evidence showed that speed limit signs had been posted by the municipality. The Vehicle Code does not contain an additional requirement that warnings be posted to alert motorists to the use of the means being used to detect violators.

Appellant's reliance upon *Commonwealth v. Brose*, 412 Pa. 276, 194 A.2d 322 (1963), is misplaced. The law as it then existed and as it was there interpreted by the Court contained a specific requirement that radar warning signs be posted. Neither the same nor a comparable provision is contained in the present Vehicle Code. Signs warning of the use of the TK 100, or even of the use of radar, are not required by 75 Pa.C.S. § 6109(c). The "official traffic-control devices" referred to therein are required only to give notice of traffic regulations or ordinances which regulate, warn or guide traffic, e.g., the maximum speed limit. See: 75 Pa.C.S. §§ 102, 6109(c). Official traffic-control devices are not required in order to notify motorists of the specific means being used at any particular moment to enforce a traffic regulation pertaining to speed. The legislature, as we have repeatedly observed, has authorized the use of electrical speed timing devices by police. No further notice of the use of such a device is required.

The judgment of sentence is affirmed.