In re Mary Ann GRABOYES, Debtor.

No. 02–33530ELF.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 11, 2007.

---

Steven B. Mirow, Philadelphia, PA, for Debtor.

Jeanne D. Bonney, Bridgeport, PA, for First Business Credit Company.

Leroy Etheridge, Philadelphia, PA, for William C. Miller, Trustee.

## MEMORANDUM OPINION

ERIC L. FRANK, Bankruptcy Judge.

### I. INTRODUCTION

Debtor Mary Ann Graboyes ("the Debtor") commenced this chapter 13 bankruptcy case on September 23, 2002. Presently before me is the Debtor's motion styled as a "Motion to Set the Amount of the Secured Claim of First Business Credit Company, To Set Off the Credit Against Said Claim Granted for its Violation of the Automatic Stay and to Have Mortgage Held Marked Satisfied" (Docket Entry No. 168) ("the Motion"). Its main (but not exclusive) thrust is a request for the disallow-

ance of a secured proof of claim filed by First Business Credit Company ("FBCC").

For the reasons set forth below, I will grant the Motion in large part and enter an Order determining that FBCC does not hold an allowed secured claim in this case. To the extent that the Motion requests other relief, I will defer a decision until a hearing is held on a different motion that has been filed by the Debtor. *See* n. 3, *infra*.

## II. BACKGROUND AND PROCEDURAL HISTORY

There is a long, contentious history between the parties that preceded the commencement of this bankruptcy case in 2002. What is more, this bankruptcy case itself has a somewhat tortuous procedural history. Below, I will summarize briefly the highlights of both the parties' relationship and the key events in this case.

### A.

The dispute between the parties originated more than fifteen (15) years ago. On February 25, 1992, the Debtor and her husband (collectively, "the Graboyes") executed a note ("the Note") and a mortgage against their residence in favor of FBCC in the amount of $10,000 or "so much of said principal sum as shall have been advanced." *See* Note, FBCC Exhibit # 1. The Note provided for monthly payments of $200.00 for twenty-three (23) months commencing on March 1992 and a balloon payment of the outstanding balance two (2) years after the date of the Note (falling due on February 25, 1994). The Note also provided for a late charge of five percent (5%) of any delinquent payment. The

Note's interest rate was 18.36% per annum. *See id.*

The Graboyes have never made any repayments on the FBCC Note. FBCC has made vigorous attempts to collect the unpaid debt. To resolve the pending Motion, it is not necessary to recount all of the details of the FBCC–Graboyes legal battle.

In the present chapter 13 case, on March 24, 2003, FBCC filed an amended secured proof of claim for $61,553.03 (Claim No. 6–1), itemized as follows:

| | | |
|---|---|---|
| mortgage advances: | 2/25/92 | $ 5,000.00 |
| | 5/25/93 | 1,500.00 |
| interest (2/25/92 to 3/25/03) | | 33,225.97 |
| estimated attorney's fees | | 23,990.00 |
| | **Total** | **$61,553.03** |

The Debtor objected to FBCC's amended secured claim on the ground that the claim was overstated. The Debtor asserted that the interest and attorney's fees included in FBCC's proof of claim were not allowable under applicable state law, *i.e.*, the Pennsylvania Loan Interest and Protection Law, Act 6 of 1974, 41 P.S. §§ 101 *et seq.* ("Act 6"). *See generally* 11 U.S.C. § 502(b)(1) (providing for disallowance of claims that are "unenforceable ... under any agreement or applicable law for a reason other than because such claim is contingent or unmatured").

In an Order dated March 11, 2005 ("the March 2005 Order"), this court sustained the Debtor's objection to FBCC's amended claim, but did not liquidate the amount, if any, allowable to FBCC. Instead, the court scheduled a further hearing for March 29, 2005 "to set the amount of the claim including a calculation of interest due on the claim."[1] *See* Docket Entry No. 114. The March 29 hearing was never held, however, because, on March 21, 2005, FBCC

---

1. My predecessor, the Hon. Kevin J. Carey, issued the March 2005 Order. Prior to February 14, 2006 this bankruptcy case and all related adversary proceedings were assigned to Judge Carey, then sitting as a bankruptcy judge in this district. Judge Carey is now a bankruptcy judge in the District of Delaware.

filed a Notice of Appeal of the March 11, 2005 Order. *See* Docket Entry No. 114. After denying the Debtor's motion to dismiss the appeal and determining that the March 11, 2005 Order was an appealable Order, the District Court affirmed the Order, *see* 2006 WL 437546 (E.D.Pa., Feb.22, 2006). The District Court's Order was itself later affirmed by the Court of Appeals, *see* 223 Fed.Appx. 112 (3d Cir.2007) (not precedential).

On April 25, 2006, the Debtor filed the present Motion to liquidate the allowed amount, if any, of FBCC's secured claim so that she could proceed, finally, to confirmation of a chapter 13 plan.[2] The Court of Appeals having affirmed, in February 2007, this court's March 2005 Order and having remanded the matter back to this court, there is no question but that the Motion is ripe for decision. A hearing on the Motion was held on May 4, 2007.[3]

One other aspect of the procedural history needs to be mentioned. After the Debtor filed the Motion on April 25, 2006, FBCC countered by filing a proof of claim on May 19, 2006 (Claim No. 6–2), asserting a total claim of $161,545.48, of which $120,000 was claimed as a secured claim

and $41,545.48 was claimed as a general unsecured claim. More than one-half of Claim No. 6–2 was for attorney's fees and the interest calculation in the proof of claim appeared to be based on the 18.36% rate in the Note. In other words, the proof of claim included charges and calculations rejected by this court in its March 25, 2005 Order and therefore, appeared to assume that FBCC would prevail in its appeal. Having lost on appeal, at the May 4, 2007 hearing, FBCC did not press for allowance of Claim No. 6–2. Rather, at the hearing, without the formality of filing another proof of claim FBCC presented evidence of its claim in a manner it contended was consistent with the March 25, 2005 Order but with a different bottom line than that in Claim No. 6–2. Thus, in resolving the Motion, I am determining whether to allow what might be described as FBCC's informal amendment to its previously filed, formal, amended proof of claim (Claim No. 6–2).

**B.**

This court entered two prior orders in this case that are relevant to this dispute. First, is the March 2005 Order, which is

2. The Debtor has proposed a chapter 13 plan that provides for 36 monthly payments to the chapter 13 trustee (which have been paid) and either a refinancing of the existing, senior mortgage on the Debtor's real property (held by an entity other than FBCC) or sale of the property. *See* Amended Chapter 13 Plan (Docket Entry No. 181). Initially, during the pendency of FBCC's appeal of the March 11, 2005 Order, the Debtor did not to press for confirmation of her plan. I surmise that the Debtor believed that a final determination with respect to the allowability and amount, if any, of FBCC's claim needed to be determined in order to assess the feasibility of the proposed plan.

3. For docket control purposes, the confirmation hearing on the Debtor's Amended Chapter 13 Plan dated May 24, 2006 (Docket Entry No. 181) and a later motion ("the Later Mo-

tion") called "Debtor's Motion to Determine Offset Against Allowed Claim of First Business Credit Company and to Then Determine its Claim, to Then Order Removal of Mortgage Held by First Business Credit Company Against Debtor's Condominium, and to Authorize Debtor, under Sec. 364, to Refinance Condominium & to Grant Lien Secured by First Mortgage Against Condominium" (Docket Entry No. 216) were scheduled for May 4, 2007. There is a substantial overlap in the subject matter of the Motion and the Later Motion. The resolution of the Motion permits the confirmation hearing and the Later Motion to be rescheduled for a decision on the merits. Any issues raised in the Later Motion not resolved by the Order accompanying this Memorandum Opinion will be addressed at the next hearing.

the law of this case. *See Casey v. Planned Parenthood of Southeastern Pa.*, 14 F.3d 848, 857 (3d Cir.1994) (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir.1985) (citations omitted)) ("It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal").[4] In that Order, this court determined that:

- the principal balance of FBCC's claim is $6,626.00;

- FBCC is entitled to ten percent (10%) simple interest per annum from the date of the advances made to the Debtor by FBCC;

- FBCC is not entitled to allowance of any amounts for the attorney's fees it has incurred in attempting to collect its claim.

The second relevant court order was entered on October 29, 2004. That order resolved an adversary proceeding the Debtor initiated on October 7, 2003 against FBCC, John Koresko and Lawrence Koresko, by filing a complaint, docketed as Adv. No. 03–1047 ("the Adversary Proceeding"). In the complaint, the Debtor asserted that the Defendants violated the automatic stay and the co-debtor stay, *see* 11 U.S.C. §§ 362(a), 1301(a). After extensive litigation culminating in a trial on the merits, the court entered a judgment dated October 29, 2004:(1) in favor of Defendants John Koresko and Lawrence Koresko and against the Debtor; and (2) in favor of the Debtor and against FBCC. *See* Adv. No. 03–1047, Docket Entry No. 53.

The court's October 29, 2004 Order also provided as follows, in pertinent part:

5. **Attorney's fees in the amount of $15,900.00 are awarded. This award shall be satisfied only by setoff against the secured claim of FBCC against the Debtor/Plaintiff as ultimately determined by the Court; and further**

6. **Said attorney's fee shall not be a judgment collectible or executable against FBCC or any other entity.**

*Id.*

Below, I will refer to the $15,900 setoff authorized by the October 29, 2004 Order as "the Setoff."

## III. *THE BURDEN OF PROOF*

The Motion is the functional equivalent to an objection to FBCC's claim. Therefore, the same burdens of proof employed in objection-to-claim contested matters should apply here.

The starting point in analyzing a claims objection is 11 U.S.C. § 502. Section 502(b)(1) provides:

Except as provided in subsections (e)(2), (f), (g), (h) and (I) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than be-

---

4.   Therefore, it is unnecessary to discuss further the rationale for the findings and legal conclusions made by the court.

cause such claim is contingent or un-matured....

■ A properly filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 501. If an objection is filed to a proof of claim, the burden of proof may shift. *See United States v. Baskin and Sears, P.C.*, 207 B.R. 84, 86 (E.D.Pa.1997). The Court of Appeals has concisely summarized the shifting burdens as follows:

[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny International, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992) (citations omitted). *See also In re Gimelson*, 2004 WL 2713059, at *13 (E.D.Pa.2004); *In re Galloway*, 220 B.R. 236, 244 (Bankr. E.D.Pa.1998).

## IV. THE PARTIES' CONFLICTING CALCULATIONS OF FBCC'S CLAIM

In her Motion, the Debtor asserts that the Setoff exceeds what she contends is FBCC's claim, if properly calculated. Therefore, the Debtor requests that FBCC's claim be extinguished. In contrast, by FBCC's calculations, its claim may exceed $50,000.00. Therefore, FBCC contends that even after application of the Setoff, it continues to hold a substantial claim secured by its mortgage against the Debtor's residential real property.

The parties' divergent calculations can be traced to several differences in the methodologies that each employed. Below, I will identify those differences.

### A. The Debtor's Calculation

The Debtor's calculation of simple interest is, for want of a better term, "simple." The Debtor starts with the date of each of the two advances FBCC made: (1) February 27, 1992 for the $5,000.00 advance; and (2) May 20, 1993 for the second advance of $1,626.00. Then, the Debtor calculates the interest on each advance separately by adding 10% of each advance for each year that passed after the date of the advance. The Debtor runs the calculation through October 29, 2004, the date of the Order in the Adversary Proceeding authorizing the Setoff of $15,900.00.

The Debtor's methodology results in a total claim, through October 29, 2004 of **$14,821.14**, calculated as follows:

**the Debtor's calculation of interest on $5,000.00 advance**

| | | |
|---|---|---|
| February 27, 1992 to October 29, 2004 | | 12.67 years [5] |
| interest rate | × | 10% |
| principal | × | $5,000.00 |
| | **Total Interest** | **$6,335.00** |

---

5. The fractional year was calculated as fol-

lows: February 27, 2004 to October 29, 2004

the Debtor's calculation of
interest on $1,626.00 advance

| May 20, 1993 to October 29, 2004 | | 11.44 years 6 |
|---|---|---|
| interest rate | × | 10% |
| principal | × | $1,626.00 |
| Total Interest | | $1,860.14 |

the Debtor's calculation of
total claim as of October 29, 2004

| Principal (per March 11, 2005 Order) | $ 6,626.00 |
|---|---|
| Interest on $5,000 advance | 6,335.00 |
| Interest on $6,626 advance | 1,860.14 |
| Total Claim | $14,821.14 |

## B. FBCC's Calculation

FBCC introduced into evidence a table that set forth its calculation of its claim. *See* FBCC Exhibit–5. FBCC's methodology differs from the Debtor's in several respects.

### 1. FBCC's calculation of late charges

First, FBCC invokes the Note's late charge provision to add late charges to the calculation of its claim. The Debtor's calculation does not address or include late charges.

The Note provides for late charges, stating:

> PROCESSING FEE—If any installment or payment of principal or interest to be paid hereunder shall be delinquent in whole or in part for more than THREE (3) days, Borrower shall pay, on demand, a delinquent payment processing fee of five (5%) percent of the entire amount of the delinquent installment or payment.

*See* FBCC Exhibit # 1.

In its calculation of the amounts it contends the Debtor owes, FBCC does not

is 245 days; 245 divided by 366 equals 0.67.

6. The fractional year was calculated as follows: May 20, 1993 to October 29, 2004 is 162 days; 162 divided by 366 equals 0.44.

7. 5% × $200/month × 23 months = $230.00

simply charge a 5% late charge against each of the twenty-three (23) $200 monthly installments falling due over the term of the Note. Such a methodology would result in an added charge of $230.00.[7] Instead, FBCC employs several techniques in calculating the late charges that dramatically increase the asserted indebtedness.

First, FBCC capitalizes the prior unpaid late charge and calculates each month's late charge by multiplying 5% against $200 plus the accumulated amount of all late charges. For example, when the Debtor missed the first monthly installment of $200.00, the 5% late charge equaled $10.00. In the next month, FBCC applied the 5% late charge to the sum of the next month's $200.00 payment plus the past due late charge of $10.00—thereby applying the 5% late charge against $210.00 rather than $200. This results in a late charge in the second month of $10.50, not $10.00. FBCC then calculates the late charge for the third month by applying the 5% late charge against $220.50. Through this methodology, the amount of the late charges increases every month.

Second, FBCC applies the 5% late charge to the balloon payment. Thus, in February 1994, FBCC assesses a late charge of $331.30, representing 5% of the $6,626.00 in principal repayment due at that time.

Third, FBCC continues to assess late charges beyond the maturity date of the Note (February 25, 1994).[8] FBCC adds late charges through the date of the hearing held in May 2007.

### 2. FBCC's calculation of interest

In calculating the interest that has fallen due, FBCC applies an interest rate of ten

8. I note that FBCC did not add to the balloon payment the accumulated unpaid prior late charges in applying the 5% charge in the months following the balloon payment or thereafter. This seems inconsistent with its approach during the term of the loan. This apparent aberration works in the Debtor's favor.

percent (10%), the rate specified in the March 2005 Order, to the initial principal advance of $5,000 and then to $6,626.00 (after the $1,626.00 advance was made in May 1993). However, FBCC imposes interest on the accruing late charges. It does so by adding interest each month to the sum of the outstanding principal (initially, $5,000.00 and after May 2003, $6,626.00) plus all outstanding late charges (an amount that increases each month) at the rate of 1/12 of 10% per month.[9]

As explained above, FBCC's method of calculating late charges resulted in the accumulation of a substantial liability through the date of the hearing—an amount in excess of $14,000. By adding those sums to the principal, FBCC's calculation of accrued interest similarly results in a liability far greater than that calculated by the Debtor. While the Debtor calculated the accrued interest to be $8,195.14,[10] FBCC calculates the accrued interest to total $29,211.69. *See* Exhibit FBCC Exhibit # 5.

### 3. *summary of FBCC calculation*

FBCC's conclusion is that its total claim as of May 2007 is $50,132.29,[11] itemized as follows:

| | |
|---|---|
| Principal | $ 6,626.00 |
| Late Charges | 14,294.61 |
| Interest on principal and accumulated late charges | 29,211.29 |
| **Total Claim** | **$50,132.29** |

### V. *DISCUSSION*

I agree with FBCC that it is entitled to collect late charges that accrued under the Note. However, I disagree with FBCC's

calculation of the proper amount of the late charges that may be assessed pursuant to the terms of the Note. I reject FBCC's methodology insofar as FBCC: (1) capitalized unpaid late charges in calculating future late charges and (2) assessed late charges following the Note's maturity date.

As for FBCC's calculation of the interest due, I reject FBCC's methodology in applying the interest rate provided in the Note to the sum of the unpaid principal and accumulated late charges (*i.e.*, capitalizing late charges when calculating interest).

As a result, as detailed below, I conclude that after properly calculating FBCC's claim, the claim is less than the Setoff authorized by the October 29, 2004 Order in the Adversary Proceeding and should be disallowed in its entirety.

### A. *Capitalization of Prior Late Charges in Calculating Late Charges*

■ The Note in this case contains little detail concerning the proper method for calculating late charges. It states only that "if an installment or payment of principal or interest . . . shall be delinquent in whole or in part for more than THREE (3) days," a five (5%) processing fee is chargeable on "the entire amount of the delinquent installment or payment." FBCC Exhibit # 1. Based on the text of the Note, I conclude that it does not provide for late charge calculation to include prior unpaid late charges.

---

**9.** I note that FBCC does not then capitalize the unpaid interest before calculating the interest due in the following month. This, too, works in the Debtor's favor.

**10.**

| | |
|---|---|
| Interest on $5,000 advance | $6,335.00 |
| Interest on $6,626 advance | 1,860.14 |
| **Total Interest** | **$8,195.14** |

**11.** There is a glaring anomaly in Exhibit FBCC Exhibit # 5. The table appears to assess interest and late charges twice for the period January 2003 through March 2005. Separate and apart from the erroneous legal assumptions FBCC has made in preparing Exhibit # 5, which are discussed in Part IV, *infra*, the existence of duplicative entries in the table, by itself, renders FBCC's calculation unreliable.

The late charge provision is triggered by the delinquency of an "installment" or a "payment of principal or interest"—not by the non-payment or late payment of a prior late charge.[12] Consequently, it makes more sense to construe the later phrase in the same sentence ("the entire amount of *the* delinquent payment or installment") to refer back to the antecedent terms ("installment," "principal" or "interest"). In the absence of any reference to prior late charges in the late charge provision, I read it to provide that if a payment of principal or interest is not paid timely, there is a five percent (5%) charge on the unpaid "installment" or other "payment of principal or interest." Therefore, on its face, the Note does not authorize the assessment of late charges on late charges.

While there is little legal authority in Pennsylvania on the subject of including prior unpaid late charges in the calculation of late charges,[13] I have located one reported decision on the subject and it supports my construction of the Note. *See In re Jordan*, 91 B.R. 673 (Bankr.E.D.Pa. 1988).

*Jordan* involved a loan written under the Pennsylvania Consumer Discount Company Act, a statute that makes reference to late charges, *see* 7 P.S. § 6213K. In *Jordan*, the court disallowed the creditor's proof of claim insofar as it sought to include previously assessed and unpaid late charges in its calculation of subsequently accruing late charges. In doing so, the court expressed considerable doubt whether the statutory provision at issue (7 P.S. § 6213K), which authorized the imposition of a late charge on any amount "extended, deferred or in arrears," permits

that late charges to be assessed against "all of the payments which were delinquent ... and previously-accrued late charges." *Id.* at 679–80. Rather, the court suggested, in dictum, based on a textual analysis of the statutory provision, that: "the use of the singular through [§ 6213K] suggests that the computation must be made by reference to the current monthly payment only." *Id.* at 679.

There are two other aspects of the court's reasoning in *Jordan* that I find helpful in this case in delineating the boundaries of the late charge provision in the Note.

■ First, the court cited Third Circuit authority for the proposition that public policy in Pennsylvania disfavors the imposition of compound interest. *Id.* (citing *Acker v. Provident National Bank*, 512 F.2d 729, 739 (3d Cir.1975)) (citing, *inter alia*, *Powell v. Retirement Bd. of Allegheny County*, 431 Pa. 396, 406, 246 A.2d 110, 115 n. 20 (1968) (Pennsylvania law "will only permit compound interest on a debt when the parties have provided for it by agreement or a statute expressly authorizes it.")).

■ From a public policy perspective, I see no reason to distinguish between the compounding of interest and the compounding of late charges. Thus, I agree with the court in *Jordan* that the compounding of late charges is appropriate "only if the contract and the statute ... are *all* unambiguous in allowing the Claimant to compound late charges...." 91 B.R. at 679 (emphasis in original). I do not find

---

**12.** Thus, as I read the Note, if the borrower: (1) failed to pay an installment, thus causing a late charge to be assessed and then, (2) prior to the next installment falling due, paid the delinquent installment but did not pay the late charge and then (3) timely paid the next in-

stallment, another late charge could not be assessed.

**13.** Act 6 does not regulate directly the imposition of late charges.

the Note in this case to be sufficiently unambiguous to satisfy this legal standard.

Second, the *Jordan* court reasoned that the very purpose of a lawful late charge may militate against permitting such charges to be compounded.

▆▆▆ A late charge is generally justified as a type of liquidated damage clause, compensating a creditor for the consequences of a borrower's late payment—in particular, the additional administrative expenses incurred in servicing a delinquent account. *See, e.g.,* Annot., *Validity of Construction of Provision Imposing "Late Charge" or Similar Exaction for Delay in making Periodic Payment on Note, Mortgage, or Instalment Sale Contract,* 63 A.L.R.3d 50, 1975 WL 37118 (1975) (collecting cases analyzing the validity of late charge provisions in sale contracts); *Crest Sav. and Loan Ass'n v. Mason,* 243 N.J.Super. 646, 649, 581 A.2d 120, 121 (1990). It is difficult to envision why the administrative expenses of addressing a loan account delinquency increase because the account is due not only for a delinquent installment, but also for a prior late charge. The ever increasing amount of the late charge, if compounding were permitted, smacks of a penalty for nonpayment, rather than liquidated, compensatory damages. It is well established that a contractual provision for liquidated damages that assesses a charge that is disproportionate to the injury that actually occurred will be treated as an unenforceable penalty provision. *Jordan,* 91 B.R. at 680 & authorities cited therein.[14]

For these reasons, while I agree with FBCC that its claim includes those late charges authorized by the Note, I reject its method for calculation of the late charges to the extent that FBCC seeks to capitalize prior late charges when computing subsequent late charges.

## B. Charging Late Charges After the Maturity Date

The next issue is whether FBCC's allowed claim includes the late charges assessed after the maturity date of the loan.[15] For two reasons, I conclude that it does not.

▆▆▆ First, the Note contains no provision specifically authorizing the imposition of late charges after the maturity date. Rather, as stated earlier, the late charge provision is triggered by the delinquency "for more than THREE (3) days" of an "installment," or a "payment" of principal or interest. *See* Part V.A., *supra.* After

---

14. In this case, I need not decide whether the compounding of late charges constitutes a *per se* transformation of the late charges into an unenforceable penalty. Rather, as an alternative basis for the disallowance of the amounts attributable to the compounding of the late charges, I find that in this case, if the Note were construed to provide for compounded late charges, to the extent compounded, the late charges are disproportionate and constitute an unenforceable penalty provision and not a reasonable liquidated damages provision.

15. The Note states:
    on the date which is TWO (2) years from the date hereof, Borrower shall pay to FBCC the remaining aggregate outstanding principal balance hereof together with all interest accrued thereon and all other costs, fees and expenses due hereunder.
    The Note also includes an acceleration clause that states:
    Whenever Borrower shall be in default as aforesaid, unless FBCC in its sole and absolute discretion elects otherwise, the entire unpaid amount of such of the Liabilities as are not then due and payable shall become immediately due and payable without notice to or demand on any Obligor. Borrower waives all rights to stay of execution and exemption of property in any action to enforce any of the liabilities.
    Note, FBCC Exhibit # 1.

the maturity date of the Note, no further installments or payments fell due on any specific date. Rather, the "payment" of the entire, matured indebtedness fell due, one time, on the maturity date. Therefore, I see no basis, under the terms of the Note, for the imposition of a new late charge each and every month following the maturity date of the Note. *See generally Security Mutual Life Ins. Co. v. Contemporary Real Estate Associates*, 979 F.2d 329, 330–31 (3d Cir.1992). (predicting that the Pennsylvania Supreme Court would follow the decisions of those courts that have rejected the imposition of late charges for failure to make monthly payments after the acceleration of a note, at least in the absence of a provision expressly providing for the assessment of such charges).[16]

■ Second, I find that FBCC has not met its burden of proof in establishing its entitlement to the charges claimed. Not only has FBCC failed to prove the existence of contractual and/or legal authority for imposing late charges after the maturity date of the Note, but even after studying FBCC Exhibit # 5, I cannot determine precisely how FBCC calculated certain monthly late charges—particularly those assessed after the February 25, 1994 maturity date. Prior to the maturity date, a

5% late charge was assessed against the sum of the$200.00 monthly installment provided by the Note and the prior unpaid late charges. After the maturity date, however, the $200.00 monthly payment obligation terminated. FBCC did not present any evidence at the hearing on the Motion explaining its methodology and its methodology is not self-evident from FBCC Exhibit # 5.[17] It was FBCC's burden to submit evidence that liquidated its asserted late charge entitlement in a comprehensible fashion—either through testimony or documentary evidence. It failed to meet that burden.

## C. *Capitalization of Late Charges in Calculating Simple Interest*

■ The last methodology issue is whether FBCC may capitalize unpaid late charges in calculating the simple interest that has accrued on the subject loan.

As with my construction of the late charge provision, I find the text of Note determinative. The Note states: "Interest shall accrue on the outstanding principal balance hereof." Nothing in this language suggests that interest shall accrue on any delinquent amount, be they unpaid interest or late charges. Thus, on its face, the Note does not authorize the interest rate methodology employed by FBCC.

---

16. In *Contemporary Real Estate Associates*, the entire indebtedness was accelerated by the creditor's exercise of a default provision under the parties' agreement. In this case, the entire indebtedness fell due upon the maturation of the Note. For purposes of determining a creditor's entitlement to late charges—which accrue when an obligation to pay money a periodic basis becomes delinquent—I see no reasons to distinguish between the two situations. In both situations, no installments fall due after a specific date and there is no reason to compensate the lender for additional administrative expenses incurred in servicing the delinquent account. After the entire indebtedness falls due, a creditor is compensated for the delay in payment

by other remedies, such as the right to prejudgment interest and contractual provisions which may require a borrower to reimburse a lender for attorney's fees and other collection expenses.

17. As an illustration of the incomprehensibility FBCC's calculation table, one need only compare the January 1994 late charge (assessed at $29.25) with the March 1994 late charge (assessed at $29.11). I do not understand why the late charge would ever decrease, given FBCC's prior methodology which resulted in ever increasing late charges.

My conclusion that the Note provides for interest to be calculated by applying the interest rate to the principal balance only, and that the interest rate may not be applied to a principal balance inflated by capitalized late charges, is reinforced by two general legal principles.

First, while my research reveals no cases in Pennsylvania that specifically address the issue whether, in computing simple interest, unpaid late charges may be added to the principal before applying the interest rate, as a general rule, simple interest is computed solely on the principal from the time the interest is to commence to the time of payment. 47 C.J.S. *Interest and Usury* 2 (2007). This approach to the calculation of simple interest has been employed by courts in Pennsylvania. *See Harrell v. Chrysler Financial Co., L.L.C.,* 811 A.2d 597 (Pa.Super.Ct.2002), *appeal denied,* 572 Pa. 765, 819 A.2d 547 (2003). As the *Harrell* court observed, under the simple interest method, interest is computed on the declining balance of principal indebtedness and the amount that accrues "will fluctuate as it is calculated on the unpaid balance when each payment is received." *Id.* at 599 (citing *Dear v. Holly Jon Equipment Co.,* 283 Pa.Super. 74, 423 A.2d 721, 724 (1980)); *accord Skolnick v. Ford Motor Credit Co.,* 319 Pa.Super. 83, 465 A.2d 1064, 1067 (1983) ("[s]imple interest ... accrues on the principal balance remaining").

Second, it is well established that, unless expressly authorized in the parties' agreement, previously unpaid interest may not be capitalized in the calculation of simple interest. *See e.g., Katzeff v. Fazio,* 427 Pa.Super. 55, 65–66, 628 A.2d 425, 430 (1993). Similarly, I see no reason why, in the absence of express contractual authority, a simple interest calculation should apply the subject interest rate to unpaid, accrued late charges. There is no reason to distinguish between unpaid interest and unpaid late charges in the calculation of simple interest. Both types of charges serve to compensate the creditor for the delay in performance by the borrower.

Because FBCC's calculation includes both the unpaid principal and outstanding (and ever increasing) late charges in its calculation of the accruing interest, FBCC's calculation is not a simple interest calculation and must be rejected. The accrued interest on the Note must be calculated by applying the proper rate to the principal balance only.

## VI. *Court's Calculation of Claim As of October 29, 2004 Prior to the Setoff*

The Debtor's methodology for computing FBCC's claim prior to the application of the Setoff is accurate—except for the Debtor's failure to include accrued late charges in the calculation. Assuming without deciding that FBCC is entitled to collect a late charge on the entire, matured indebtedness on February 25, 1994, the maturity date of the Note (*i.e.,* on the balloon payment), I calculate the indebtedness as of that date to be $8,376.84:

**Court's Calculation of Claim Prior to the Maturity Date of the Note (February 25, 1994)**

| | |
|---|---|
| Principal (per March 11, 2005 Order) | $6,626.00 |
| Interest on advances totalling $6,626 | 1,125.20 [18] |

18.

| February 27, 1992 to February 25, 1994 | 2.00 years |
|---|---|
| interest rate | × 10% |
| principal | × $5,000.00 |
| **Interest** | **$1,000.00** |

| May 20, 1993 to February 25, 1994 | 0.75 years |
|---|---|
| interest rate | × 10% |
| principal | × $1,626.00 |
| **Total Interest** | **$ 125.20** |

| | |
|---|---|
| late charge on first 23 installments | 230.00 [19] |
| late charge on balloon payment | 399.05 [20] |
| **Total Claim** | **$8,380.25** |

Next, I have calculated the accrued interest on the principal balance from February 25, 1994 through October 29, 2004, the date of the Setoff. The accrued interest for that period amounts to $7,069.94, calculated as follows: **$6,626.00 × 10%/yr × 10.67 years = $7,069.94.**

The last step is to add the accrued interest of $7,069.84 to the indebtedness as of February 25, 1994 of $8,376.84. This results in a total claim of $15,450.19 as of October 29, 2004, an amount less than the Setoff of $15,900.00.

| | |
|---|---|
| Indebtedness as of February 25, 1994 | $ 8,380.25 |
| Interest on advances totalling $6,626 | 7,069.94 |
| **Total Claim** | **$15,450.19** |

I observe that in the calculation set forth above, I have assumed that FBCC is entitled to continue to charge interest on the unpaid principal at the contract rate of 10% after the maturity date of the Note. Alternatively, if FBCC is entitled only to interest at the "legal rate" in Pennsylvania of six percent (6%), see 41 P.S. 201, on the entire, matured indebtedness after February 25, 1994, the claim, as of October 29, 2004, comes to a lower amount: $13,745.20.[21]

■ Under either methodology, FBCC's claim as of the date the Setoff was authorized was less than the amount of the Setoff of $15,900.00. Therefore, I find that FBCC's claim was extinguished as of October 29, 2004, requiring that its claim be disallowed.[22]

19. 5% × $200.00 × 23 = $230.00

20. This calculation assumes, without deciding, that the late charge applies to the entire principal balance on the maturity date of the loan, plus all accrued interest and late charges assessed as of the maturity date.

| | |
|---|---|
| Principal (per March 11, 2005 Order) | $6,626.00 |
| Interest on advances totalling $6,626 | 1,125.20 |
| late charge on first 23 installments | 230.00 |
| Sub-total | $7,981.20 |
| late charge on balloon payment × | 5% |
| | $ 398.89 |

21. This amount is calculated as follows: $8,376.84 × 6%/yr × 10.67 years = $5,362.85

| | |
|---|---|
| Entire Indebtedness as of February 25, 1994 | $ 8,380.20 |
| Interest on entire indebtedness at legal rate thru Oct. 29, 2004 | 5,365.00 |
| **Total** | **$13,745.20** |

22. I note one other issue that was raised at the hearing on the Motion. FBCC argued that its claim should include interest through the date of the ruling on the Motion. FBCC is correct in stating that because the Debtor's chapter 13 plan has not yet been confirmed, insofar as FBCC holds a secured claim that is "oversecured," it is entitled to pre-confirmation interest on its claim. See 11 U.S.C. §§ 506(b). There also is no dispute that any claim FBCC may hold is "oversecured."

However, FBCC's argument overlooks the fact that the claim was modified by the Setoff. Certainly, if instead of obtaining the Setoff of $15,900.00, the Debtor had paid $15,900.00, FBCC would not argue that it could continue to calculate interest on its claim as if no payment had been made. I see no reason to distinguish the application of the Setoff from a payment.

I also point out that if FBCC's methodology were employed, it may require that interest also run on the Setoff judgment at the federal rate. See 28 U.S.C.1961. It would not seem equitable to run interest on one claim and not the other. If interest continued to accrue on the principal balance of the Note at the contract rate of 10% for the period October 29, 2004, through June 30, 2007 (a few days before the issuance of this Memorandum Opinion) and on the Setoff at the federal rate for the same period, I calculate that FBCC would hold a secured claim of approximately $400.00 after application of the Setoff. If, on the other hand, interest on FBCC's claim is calculated at the Pennsylvania legal rate through June 30, 2007, the Setoff still exceeds FBCC's claim. Thus, even employing this alternative methodology, the date on which the calculation is finalized does not have a substantial quantitative impact on the outcome of this case.

In any event, I need not decide whether interest would run on the Setoff judgment. I

## VII.

For the reasons set forth above, I will grant the Motion and issue an order disallowing FBCC's claim in its entirety.

## *ORDER*

**AND NOW,** upon consideration of the Debtor's Motion to Set the Amount of the Secured Claim of First Business Credit Company, To Set Off the Credit Against Said Claim Granted for its Violation of the Automatic Stay and to Have Mortgage Held Marked Satisfied ("the Motion") and after a hearing on the Motion, and for the reasons set forth in the accompanying Memorandum Opinion, I

It is hereby **ORDERED** and **DETERMINED** that:

1. The Motion is **GRANTED IN PART.**

2. FBCC's Proof of Claim (Amended Claim No. 6–2), which supersedes Claim No. 3 and which was amended informally at the hearing on the Motion, is **DISALLOWED IN ITS ENTIRETY.**

3. All other relief requested in the Motion is **DENIED WITHOUT PREJUDICE.**

4. A hearing on the Debtor's "Debtor's Motion to Determine Offset Against Allowed Claim of First Business Credit Company and to Then Determine its Claim, to Then Order Removal of Mortgage Held by First Business Credit Company Against Debtor's Condominium, and to Authorize Debtor, under Sec. 364, to Refinance Condominium & to Grant Lien Secured by First Mortgage Against Condominium" (Docket Entry No. 216), presently scheduled for **July 13, 2007** is **CONTINUED** to **September 7, 2007, at 9:30 a.m., in Bankruptcy Courtroom No. 1, U.S. Court-** house, **900 Market Street, 2d Floor, Philadelphia, PA 19107.**

5. Any further amended chapter 13 plans shall be filed by the Debtor on or before **August 6, 2007.**

6. A hearing on confirmation of the Debtor's chapter 13 plan will be held on **September 7, 2007, at 9:30 a.m.**

7. Failure of the Debtor to obtain confirmation of a chapter 13 plan on September 7, 2007 may be considered as grounds for dismissal of this chapter 13 case due to unreasonable delay that is prejudicial to creditors. *See* 11 U.S.C. § 1307(c)(1).

conclude that there is no reason to further calculate interest in any fashion after October 29, 2004 because FBCC's claim was extinguished by the Setoff on that date.